**Daniel DeNARDO, Plaintiff,**

v.

**Karl JOHNSTONE, Alaska Public Employees Association, and Patrick Murphy, Defendants.**

**No. A90–0101 Civ.**

United States District Court,
D.Alaska.

Sept. 6, 1991.

---

Daniel DeNardo, pro se.

Stephanie E. Joannides, Asst. Atty. Gen., Juneau, Alaska, for Johnstone.

William K. Jermain and Robert A. Royce, Jermain, Dunnagan and Owens, Anchorage, Alaska, for ASEA and Murphy.

## ORDER

SINGLETON, District Judge.

Daniel DeNardo ("DeNardo") sued Patrick Murphy and the Alaska Public Employees Association ("APEA"). DeNardo charged that Murphy and APEA fraudulently caused DeNardo to lose his employment with the State of Alaska and contended that Murphy's and the APEA's reckless and intentional conduct deprived DeNardo of his job, which DeNardo contends is property, in violation of the Fourteenth Amendment. DeNardo predicated his claim on 42 U.S.C. § 1983. This court has jurisdiction pursuant to 28 U.S.C. § 1343. [*See* Docket No. 18] This court granted Murphy and the APEA summary judgment dismissing DeNardo's claim after briefing and a magistrate's recommendation. [*See* Docket No. 31] Murphy and the APEA thereafter filed a motion seeking attorneys' fees pursuant to 42 U.S.C. § 1988. For reasons set out hereafter, I grant the motion and award Murphy and APEA the fees reasonably incurred in defending this action.[1]

## BACKGROUND

The facts in this case are set out in *DeNardo v. Murphy*, 781 F.2d 1345 (9th Cir.1986) and *DeNardo v. State*, 740 P.2d 453 (Alaska 1987). I will summarize those facts adding, where necessary, additional information developed in the course of this case and derived from the files in *DeNardo v. Murphy*, A85-3745 and A85-3773. In April 1978, DeNardo, an employee of the State of Alaska, was discharged by the state, at Murphy's request, for not paying union dues and assessments. The collective bargaining agreement then in effect between the state and (APEA) established an "Agency Shop" and required the state to terminate any employee who failed to comply with the agency shop agreement upon APEA's request for termination. APEA requested DeNardo's termination because of alleged failure to pay the APEA dues or agency fees DeNardo owed under the terms of the agreement.

In July 1978, DeNardo contested his firing and sought administrative review of his termination by filing unfair labor charges against his employer, Murphy, and the APEA with the Alaska Labor Relations Agency, which rendered a decision against him. The agency held a hearing in October of 1978, and issued a written decision on January 8, 1979. It found that DeNardo was delinquent in his payment of agency shop fees at the time of his termination and concluded that the state had discharged him for just cause. DeNardo did not seek judicial review of that decision, although review was available under AS 44.62.520–.560. I will refer to the agency proceeding hereafter as *DeNardo I*.

In April of 1980, DeNardo sued Murphy, APEA, and the State of Alaska in state superior court for "taking and conversion" of his fourteenth amendment interest in employment. The case was assigned to Superior Court Judge Karl Johnstone. On September 2, 1980, Judge Johnstone entered summary judgment against DeNardo, dismissing his action with prejudice based on DeNardo's failure to appeal the agency decision. Essentially, Johnstone found that DeNardo's failure to appeal the agency decision or seek reconsideration in conformity with the Alaska Administrative Procedure Act resulted in the agency decision becoming final and entitled to *res judicata* effect against DeNardo. DeNardo appealed and the State Supreme Court affirmed in an unpublished decision. *See De-Nardo v. Murphy*, Memorandum Opinion and Judgment No. 93 (Alaska, July 28, 1981). (*DeNardo II*). DeNardo sought certiorari in the United States Supreme Court which was denied. *DeNardo v. Murphy*, 454 U.S. 1096, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981), *rehearing denied*, 455

---

**1.** I find this to be an appropriate matter for resolution without oral argument. Local General Rule 5(C). DeNardo has requested oral argument primarily to argue Karl Johnstone's status as a judge. As I will show, that issue is irrelevant to this order.

U.S. 1038, 102 S.Ct. 1743, 72 L.Ed.2d 156 (1982).

In June 1982, DeNardo brought the same complaint against the same parties in Alaska Federal District Court and Judge Fitzgerald granted summary judgment to Murphy on *res judicata* grounds. The state counterclaimed for an injunction precluding DeNardo from bringing further suits against it. Murphy and the APEA did not join in the counterclaim. Judge Fitzgerald did not decide the counterclaim. This part of the case was reassigned to Judge Holland. Chief Judge Holland granted the state summary judgment on its counterclaim and entered an injunction barring DeNardo from filing any further actions regarding the 1978 termination of his employment with the State of Alaska. DeNardo appealed to the Ninth Circuit and the court affirmed. *DeNardo v. Murphy*, 781 F.2d 1345 (9th Cir.1986). (*DeNardo III*), *cert. den.* 476 U.S. 1111, 106 S.Ct. 1962, 90 L.Ed.2d 648 (1986). The court did not reach the *res judicata* issue. The court decided that any claim DeNardo had under 42 U.S.C. § 1983, against anyone as a result of his termination in 1978, was barred by the applicable Alaska State statute of limitations. The court affirmed the injunction finding also:

> In view of the number of times DeNardo has forced these defendants to defend themselves on the same claim, the age of the underlying claim, and the resolution of the same issue in both federal and state courts, the district court did not abuse its discretion by enjoining future litigation over DeNardo's 1978 discharge.

*Id.* at 1348.

In April of 1984, before the district court had rendered judgment, DeNardo brought a third claim in Alaska State Superior Court. That case was assigned to Superior Court Judge Brian Shortell. DeNardo alleged essentially the same facts as in his earlier cases. Judge Shortell dismissed DeNardo's complaint with prejudice on the basis of *res judicata* on January 24, 1985. DeNardo appealed to the Alaska Supreme Court which affirmed in a published decision. *DeNardo v. State*, 740 P.2d 453 (Alaska 1987). (*DeNardo IV*), *cert. den.* 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987).

DeNardo commenced this action in Federal District Court on March 23, 1990, alleging the same cause of action against Murphy and the APEA that he had alleged in his previous cases. In addition, DeNardo claims that Judge Karl Johnstone, who presided over *DeNardo II*, had not signed a written oath prior to taking office. DeNardo claims this violates the Alaska State Constitution and in DeNardo's view, prevented Johnstone from being a judge. DeNardo makes other claims against Johnstone, but they are not relevant to his claims against Murphy and APEA. This case was initially assigned to Judge Kleinfeld who referred it to Magistrate John Roberts for a report and recommendation pursuant to Local Rule 4. Thereafter, this case, and a number of others, was assigned to me when I assumed office in August of 1990. Magistrate Judge Roberts filed a recommendation that this court grant Murphy's motion for summary judgment. After considering objections, I granted the motion for summary judgment. Murphy's motion for attorney's fees is now ripe for decision.

## DISCUSSION

DeNardo sued Murphy under 42 U.S.C. § 1983. This court granted Murphy summary judgment. Murphy is therefore the prevailing party. An award of attorneys' fees to a prevailing defendant is authorized under 42 U.S.C. § 1988 when the action is groundless, without foundation, frivolous or unreasonable. It need not be brought in subjective bad faith. *See Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); *Christiansburg Garment Co. v. Equal Employment Opportunity Comm.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Nevertheless, before awarding fees to a defendant, the court should be able to find that the plaintiff, if he appears *pro se*, knew or should have known that his case was without merit. *Miller v. L.A. Board of Education*, 827 F.2d 617 (9th Cir.1987). It is not enough that the court is able to sum-

marily dispose of the case without trial. Bearing in mind, Congress's desire to encourage those whose rights have been infringed, to pursue those rights in the courts, a district court should be particularly hesitant to award fees against an unrepresented plaintiff. *Id.* at 620. In such a case, the court must consider the *pro se* plaintiff's ability to recognize the merits or demerits of his or her case. *Id.* In practice, the court should refrain from awarding fees against a *pro se* plaintiff unless it can find that a reasonable lay person, having knowledge of the facts known to the plaintiff, would have recognized that his or her claim was without merit. Such a finding is most appropriate where the court finds that the plaintiff is proceeding in bad faith or for an improper motive.

DeNardo has conceded all along that his claim against Murphy and the APEA is identical to claims previously brought and rejected in the state and federal courts and that both state and federal courts have held that his claims against Murphy and the APEA are barred by *res judicata* and collateral estoppel. DeNardo argues, however, that all of those cases should, in effect, be viewed as an array of dominoes in which *DeNardo II* is the central domino.

In DeNardo's view, if he can somehow avoid the preclusive effect of *DeNardo II*, it will fall down, dislodging all the other cases, which will disappear, and DeNardo will be free to pursue his action against Murphy and the APEA.

Judge Johnstone presided, at the trial level, over *DeNardo II* and, consequently, DeNardo has tried to show that Judge Johnstone was not qualified to preside over the trial in order to argue that the superior court lacked subject-matter jurisdiction to enter judgment against him. DeNardo apparently relies on the dicta in *Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966), setting out the circumstances under which a prior judgment is subject to a collateral attack. In *Holt*, the supreme court cited, with approval, the then current version of the Restatement Judgments § 11, comment b (1942). *Holt*, 420 P.2d at 471 nn. 8–12. The supreme court still relies heavily on

the Restatement in its current version when deciding questions of *res judicata* and collateral estoppel. *See DeNardo IV*, 740 P.2d at 456 (*citing* Restatement (Second) of Judgments § 24(a) (1982)).

■ DeNardo challenges Johnstone on two general bases: First, he contends that Johnstone misrepresented his candidacy and qualifications in seeking confirmation by the voters in 1982 and 1988. In DeNardo's view, this somehow infringed DeNardo's first amendment rights as a voter and therefore entitles DeNardo to damages under 42 U.S.C. § 1983. It would not appear that anything Judge Johnstone did in 1982 and 1988 could affect his jurisdiction to decide *DeNardo II* in 1980. Consequently, these claims are irrelevant to DeNardo's claims against Murphy and APEA. DeNardo's second basis is arguably relevant to Murphy and APEA's claim for attorneys' fees. DeNardo argues that Judge Johnstone did not sign a written oath of office prior to presiding over DeNardo's case in 1980. DeNardo relies on Alaska State Constitution Article XII § 5 and, by extension, AS 22.10.110, which arguably requires a superior court judge to take and *subscribe* a prescribed oath before taking office. DeNardo does not question that Judge Johnstone, as part of the traditional investiture and installation proceeding, took an oral oath. *See Division of Elections v. Johnstone*, 669 P.2d 537, 550 (Alaska 1983) (Burke, J., dissenting) (discussing the date on which Judge Johnstone first took and oral oath of office), *cert. den., sub nom., DeNardo v. Johnstone*, 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984). DeNardo does, however, argue that the state constitution requires a signed written oath and that he was able to determine, through a lawsuit against the state in 1988, that there is no record that Judge Johnstone took a written oath before 1989. In DeNardo's view, subscribing an oath is a mandatory requirement which is a prerequisite to functioning as a judge. DeNardo contends that a judge's failure to subscribe such an oath renders any subsequent exercise of a judicial function a nullity. DeNardo relies on cases from Florida and Texas. *See Holloway v. State*, 342 So.2d 966 (Fla.1977);

*French v. State,* 572 S.W.2d 934 (Tex.Crim. App.1977).

These cases hold that a public official, including a special judge, who has not taken a proper oath may not legally perform public functions. Magistrate Judge John Roberts rejected DeNardo's arguments and recommended that summary judgment be entered against him. [Docket 27] The magistrate judge recognized that a state court judgment is entitled to the same preclusive effect in federal court that it would be entitled to in state court. *See* 28 U.S.C. § 1738. *University of Tenn. v. Elliot,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Neither the state constitution nor the applicable statute spell out the consequences of a judicial officer rendering a judgment before he or she has subscribed an oath and therefore the magistrate judge was required to predict what the Alaska Supreme Court would hold. [Docket 27 at 6]

The magistrate judge concluded that the Alaska Supreme Court would find that Johnstone was, at the very least, a *de facto* judge whose decision could not be collaterally attacked. Such a conclusion is necessary in order to protect the reasonable expectations of litigants like Murphy and the APEA. Since the Alaska Supreme Court tends to follow the Restatement of Judgments, this analysis is probably an accurate prediction. If DeNardo wasn't aware of Judge Johnstone's disqualification until 1988, it would not appear that Murphy and APEA should have been aware of it in 1980 and, therefore, the Alaska Supreme Court would not permit a collateral attack even if it found that Johnstone was disqualified. *See* Restatement (Second) of Judgments, § 11 and 12. None of DeNardo's cited cases are really to the contrary. All involve direct appeals of criminal convictions in which the appellate court found that no intervening rights of innocent third parties were involved.

If judgment in this case relied on the *de facto* officer's doctrine or the intricacies of the Restatement of Judgments to defeat DeNardo's collateral attack, this court could not find that his arguments were so groundless that they warranted an award of attorneys' fees to Murphy and the APEA. *See DeNardo v. Municipality of Anchorage,* 775 P.2d 515, 517–18 (Alaska 1989), *cert. denied,* 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989) (*DeNardo V*) (rejecting similar arguments by DeNardo on *res judicata* grounds, but holding that an award of attorneys' fees was an abuse of discretion). However, it is clear that the extended discussion by the magistrate of the *de facto* officer's doctrine was a courteous attempt to specifically address DeNardo's concerns and is not necessary to a judgment in Murphy's favor.

■ A review of the respective decisions in *DeNardo I–IV* makes it clear that neither the panel of the Ninth Circuit nor the Supreme Court of Alaska relied exclusively on Judge Johnstone's decision in order to rule against DeNardo. The decisions in both cases should have made it clear to a reasonable lay person that DeNardo could not bring any further proceedings based on DeNardo's termination in 1978 under 42 U.S.C. § 1983 against Murphy or the APEA no matter what theory or facts DeNardo alleged he relied upon. Both courts made it as clear as possible that each case in which DeNardo was defeated stands on its own feet and does not depend upon any other case. Thus, even if DeNardo could show, at this late date, that Judge Johnstone lacked subject matter jurisdiction over him so that Johnstone's decision was void, the judgments by the administrative agency, Judge Shortell, Judge Fitzgerald, the Alaska Supreme Court, and the Ninth Circuit Court of Appeals would independently bar this action. A review of the appellate decisions will explain this conclusion.

The Ninth Circuit decision is clear. The panel expressly disclaimed any reliance on *res judicata* and rested its holding squarely on the applicable statute of limitations, which it found to be two years. AS 09.10.-070. *See DeNardo III,* 781 F.2d at 1347–48. Therefore, the court concluded any action by DeNardo in state or federal court against Murphy or the APEA based on DeNardo's discharge from employment in

April 1978 would have been barred in April of 1980. Consequently, without regard to *res judicata,* DeNardo's action filed in June 1982 was untimely. *Id.* at 1347. Further, the court expressly held that the pendency of DeNardo's earliest state court action (apparently the action before Judge Johnstone) *did not* toll the statute of limitations. *Id.* 781 F.2d at 1347–48 n. 4. Finally, the court's primary reason for upholding the injunction precluding DeNardo from filing additional law suits based on his firing, was the statute of limitations and the court's conclusion that so much time had passed that any claim DeNardo would make would be untimely. The court also found inferentially that DeNardo was a vexatious litigant who used litigation as a means of harassment. *See* 781 F.2d at 1348. But it is clear that the court's primary concern was the staleness of the claim not DeNardo's character as a litigant.

In summary, the Ninth Circuit held that the applicable statute of limitations had run on any claim DeNardo could bring against Murphy under 42 U.S.C. § 1983 based on Murphy's conduct in getting DeNardo fired in 1978. On this basis, DeNardo was enjoined from bringing any action ever against the State of Alaska without prior judicial approval. DeNardo's suggested justification for bringing this action that Judge Johnstone took an oral oath, rather than signed a written oath prior to deciding the motion for summary judgment in *DeNardo II* is totally irrelevant to the Ninth Circuit's ruling. It is also clear that the Ninth Circuit's ruling regarding the statute of limitations is binding on this court under the doctrine of *res judicata,* regardless of anything that may have happened in state court. The Ninth Circuit patiently explained to DeNardo, in language any lay person could understand, that DeNardo's litigation in state court did not toll the statute of limitations regarding an action in federal court.

Even if the ninth circuit had not decided *DeNardo III* the way it did, this action would still be groundless. The Alaska Supreme Court made this clear to any lay reader when it published its opinion in *De-Nardo IV.* It is important to remember that the only evidentiary hearing ever held in this case took place before the administrative agency in a proceeding brought by DeNardo. The agency ruled against De-Nardo on the facts and specifically held that he had been fired for just cause for failure to timely pay union dues and assessments. DeNardo did not seek judicial review of the agency action and it became final. Alaska provides extensive procedures for agency adjudication of disputes like DeNardo's, including judicial review, *see* AS 44.62.330–640. Therefore, it necessarily follows that final agency adjudications are *res judicata* in both state and federal court in later actions brought pursuant to 42 U.S.C. § 1983. *See University of Tennessee v. Elliot,* 478 U.S. 788, 796–99, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986); *Sublett v. State, Comm. Fisheries Entry Com'n,* 773 P.2d 952, 954 (Alaska 1989); *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8–9 (Alaska 1979); Restatement (Second) Judgements § 83. By failing to appeal the agency decision against him, DeNardo lost the right to bring an action in this or the state court contesting his termination regardless of anything Judge Johnstone did or failed to do thereafter, since Judge Johnstone's acts or omissions could not revive a stale claim. *See, Sublett,* 773 P.2d at 955.

The Ninth Circuit's statute of limitation decision and the agency decision which was not appealed, provide two reasons why De-Nardo's claims in this case are groundless, without foundation, frivolous, and unreasonable. There are two more independent reasons. In 1980, DeNardo brought *De-Nardo II* which was assigned to Judge Johnstone. Judge Johnstone granted summary judgment against DeNardo on the ground that his failure to appeal the agency decision against him made it *res judicata* against him. Judge Johnstone did not take evidence or hold a trial. He rendered judgment against DeNardo purely on a question of law. DeNardo did not accept this determination and appealed to the Alaska Supreme Court which affirmed in

an unpublished decision. *DeNardo II*.[2] As the Supreme court pointed out in its later decision in this case, Judge Johnstone's decision cured any jurisdictional problems with the agency decision and the Supreme Court's affirmance cured any problems with either the agency decision or Judge Johnstone's decision. *DeNardo IV*. *Id*. at 457 and n. 4. The supreme court explained, in language that any lay person could understand, that a person who is unhappy with a prior judgment and attempts to collaterally attack it on the ground that it is therefore void, must include any basis for making that claim in his collateral attack. If judgment is rendered against the party making the collateral attack, that judgment cures any deficiencies in the earlier agency or court decision, so that it cannot be subsequently attacked, even if it would otherwise be void. *Id*. at 457. Under the same reasoning, Judge Shortell's decision rejecting DeNardo's challenges to the *res judicata* effect of the prior agency decision and Judge Johnstone's decision, would itself cure any prior jurisdictional defects and constitute a fourth reason why this lawsuit against Murphy and APEA is groundless. It should be noted that Judge Shortell's decision was also affirmed on appeal. *Id*.

The foregoing would establish that any lay person, having read all of the decisions rendered against DeNardo, would have recognized that this lawsuit was groundless and that he would be subject to an adverse award of attorneys' fees under 42 U.S.C. § 1988. This would be true even if DeNar-

do was so invincibly ignorant that he was proceeding in good faith. It is clear, however, that DeNardo is not proceeding in good faith. When we compare the series of lawsuits discussed in this opinion with a similar set of cases DeNardo has brought regarding other matters, his lack of good faith is readily apparent.

DeNardo has apparently received a number of traffic citations which he has defended on the grounds that the arresting officer was without authority because he or she had not, prior to issuing the ticket, subscribed an oath of office. *See DeNardo v. Municipality of Anchorage*, 775 P.2d 515, 516 (Alaska 1989), *cert. den.*, —— U.S. ——, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989) (*DeNardo V*). It appears that DeNardo followed the same pattern in litigating this issue that he followed in litigating his termination from employment. He first contests the issue in state court, loses; brings a companion case in federal court, loses; exhausts his federal appellate remedies and then refiles in state court. In *DeNardo V*, the Alaska Supreme Court found against DeNardo, patiently explaining to him how *res judicata* operates. *Id*. 775 P.2d at 516–17. DeNardo was not deterred for he refiled in this court in *DeNardo v. Municipality of Anchorage*, A90–172 Civ. (D.C. Alaska 1991). He once again made the rejected claims and added claims against the lawyers who litigated against him and the judges who ruled against him. He claimed their pleadings and decisions contained false assertions of fact which were disseminated by mail, allegedly warranting

---

2. When the Alaska Supreme court reviews a summary judgment, it does so *de novo*. It does not defer to the trial court. It reviews the record to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Hatten v. Union Oil Co. of Calif.*, 778 P.2d 1150, 1152 (Alaska 1989). All factual inferences from the record must be drawn in favor of the non-moving party. *Id*. at 1153. Consequently, the supreme court independently determined that Murphy and APEA were entitled to judgment against DeNardo on the issue of DeNardo's 1978 employment termination. (*DeNardo II*) The supreme court's independent review of the law and the facts cured any deficiency in Johnstone's status regarding the taking of an oath. In Judge Fitzgerald's initial decision, there is an

indication that the supreme court denied a hearing in this case. This is not so. The supreme court has no discretion to decline to hear an appeal in a civil case. Appeal is a matter of right. AS 22.05.010(b). (The court of appeals only has jurisdiction over appeals in criminal cases. AS 22.07.020.) *See* Alaska Appellate Rule 202. The supreme court heard DeNardo's appeal from Judge Johnstone's order granting Murphy and APEA summary judgment, but disposed of it by summary order of affirmance. *Id*. Rule 214(a). *Cf*. Ninth Circuit Rules 36–1 and 36–3 (to the same affect). A copy of the memorandum disposition in this case is attached hereto as exhibit A. *DeNardo v. Murphy*, Memorandum Opinion and Judgment, No. 93 (Alaska, July 28, 1981).

relief under federal statutes prohibiting mail fraud.

■ An examination of all of DeNardo's cases shows a common pattern. He successively brings the same claim in state and federal court over and over again. He appeals each adverse decision to the state or federal appellate court and then petitions for certiorari in the United States Supreme Court. It is clear that DeNardo really does not expect to prevail on the merits. He is simply using litigation as a means of harassing those he dislikes, by forcing them to retain counsel and incur costs in order to defend his repetitious litigation. The Ninth Circuit sought, unsuccessfully, to put an end to this harassment by approving an injunction requiring DeNardo to obtain court permission before litigating claims growing out of the termination of his employment with the state. DeNardo ignores the injunction. It is time for him to begin to pay his opponents costs.

## A PROPER AWARD OF FEES

■ In determining a proper award of fees, this court must begin with the "Lodestar" amount: "the number of hours worked multiplied by a reasonable hourly rate." *Miller v. L.A. Board of Education*, 827 F.2d 617, 621 (9th Cir.1987). Here, Murphy's attorneys, Jermain, Dunnagain & Owens ("JDO"), have provided the court with a detailed hourly billing establishing the number of hours they worked and the hourly rates charged for each attorney based on his or her years of experience. (Docket No. 37). In Alaska state litigation, unlike litigation in the states of the Ninth Circuit as a whole, the prevailing party is typically entitled to an award of attorneys' fees. *See* Alaska Rule of Civil Procedure 82. This rule has been incorporated by reference in District of Alaska Local General Rule 21.1. Consequently, Alaska judges are usually well acquainted with prevailing fees. In any event, while DeNardo objects to an award of fees he does not specifically question the fairness of the hourly rates charged by JDO.

I find those fees to be compatible with the prevailing fees charged in this jurisdiction and the hours charged reasonable in responding to the claims in this case. I see nothing in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), that justifies departure from the lodestar amount.

■ Most of the *Kerr* factors involve awards to prevailing plaintiffs. Even a lawyer familiar with DeNardo's past actions would still have to review the history of this case and read the various complaints to make sure that they were the same. While there are charges for conferences between lawyers, I find them reasonable in order to permit a more experienced lawyer, with a higher hourly fee, to effectively delegate case preparation to a less experienced and, therefore, less costly attorney. Finally, I recognize that a judge contemplating an award of fees to a prevailing defendant under 42 U.S.C. § 1988, should consider the plaintiff's financial resources in making an award.

I decline to do so in this case. First, while DeNardo has requested oral argument to reargue his claims based on Judge Johnstone's oath, DeNardo has not requested a hearing to determine his ability to pay. Second, DeNardo has vigorously fought attempts to inquire into his financial resources in the past to the point of spending six months in jail for contempt of court for refusing to answer questions about his income when a prior award of attorneys fees was made. *See DeNardo v. Michalski*, 811 P.2d 315 (Alaska 1991). Under the circumstances, a *sua sponte* hearing to inquire into DeNardo's finances would be a waste of time. Finally, the requested award in this case is so modest—$1588.50—that even indigency would not seem a legitimate reason to refuse to award it. *See Miller*, 827 F.2d at 621 n. 5, quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir.1982) (District court should not refuse to award attorneys' fees to a prevailing defendant under applicable law solely on the ground of the plaintiff's financial situation.)

IT IS THEREFORE ORDERED:

DeNardo's claims against Patrick Murphy and the Alaska Public Employees Association are groundless, frivolous, unreasonable, and without foundation. Judgment has been entered against DeNardo. Murphy and the APEA are prevailing defendants entitled to fees under 42 U.S.C. § 1988. The requested fees are based solely on the Lodestar test, *i.e.*, the hours worked multiplied by the working attorney's normal billing rate. The hours worked were reasonable under the circumstances and the billing rates appear compatible with community norms. Patrick Murphy and the Alaska Public Employees Association are therefore entitled to judgment against Daniel DeNardo in the amount of $1588.50 and the clerk shall enter judgment accordingly.

472

EXHIBIT A

Filed and Entered.................................... CW

Γ°PELLATE COURTS of the
ST^ 'E of ALASKA

THE SUPREME COURT OF THE STATE OF ALASKA

JUL 2 8 1981

ROBERT D. BACON    CLERK

By ................. ..... ...................QN......Deputy

DANIEL R. DeNARDO,                )
                                  )
          Appellant,              )
                                  )
     v.                           )
                                  )
PATRICK MURPHY, DIRECTOR,         )
ALASKA PUBLIC EMPLOYEES           )
ASSOCIATION; ALASKA PUBLIC        )
EMPLOYEES ASSOCIATION; STATE      )
OF ALASKA,                        )
                                  )
          Appellees.              )
                                  )
_____)

File No. 5631

MEMORANDUM OPINION
AND JUDGMENT*

(No. 93 – July 28, 1981)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Karl S. Johnstone, Judge.

Appearances: Daniel R. DeNardo, Anchorage, pro se. Patrick E. Murphy, Faulkner, Banfield, Doogan & Holmes, Juneau, for Appellees Alaska Public Employees Association and Patrick Murphy. Richard Monkman and Amy J. Stephson, Assistant Attorneys General, Anchorage, and Wilson L. Condon, Attorney General, Juneau, for Appellee State of Alaska.

Before: Rabinowitz, Chief Justice, Connor, Burke, Matthews and Compton, Justices.

The judgment of the superior court is affirmed.

*Entered pursuant to Appellate Rule 214.