Richard J. TRACY and Durena
K. Tracy, Appellants,

v.

STATE of Alaska, DEPARTMENT OF
HEALTH & SOCIAL SERVICES, OF-
FICE OF CHILDREN SERVICES, Ap-
pellee.

No. S–13904.

Supreme Court of Alaska.

June 29, 2012.

er of jury trial in its motion, the superior court's reliance on that waiver may have been prema- ture.

Richard J. Tracy and Durena K. Tracy, Wasilla, pro se, Appellants.

Laura C. Bottger, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Richard and Durena Tracy appeal the superior court's dismissal of their state law negligence and federal constitutional claims against the State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS). This case arises out of Child in Need of Aid (CINA) proceedings

to protect their granddaughter, Annie.[1] The Tracys also appeal the superior court's denial of summary judgment in their favor and its award of attorney's fees against them. We affirm the superior court's dismissal of the case but vacate the award of attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Facts

Richard and Durena Tracy (the Tracys) are the biological grandparents of the minor child Annie. The Tracys are now also her adoptive parents, having adopted Annie some time after the events that gave rise to this action. Prior to the initiation of the CINA proceedings in this case, the Tracys were Annie's legal guardians. They received physical custody of Annie in June 2004 when Annie was approximately two years old.

In September 2007 Annie, then five years old, was living with the Tracys. OCS removed Annie from the home on September 19, 2007, responding to a report made earlier that day by Annie's kindergarten teacher who suspected, inaccurately, that Annie had been sexually abused by Richard.[2] Annie was interviewed by OCS, the Alaska State Troopers (AST), and the Wasilla Police Department (WPD). Neither Richard nor Durena was allowed to be present for the interview, which was videotaped.

After the interview, AST and WPD officers told Richard that he would have to leave his home until a complete investigation was conducted. The officers informed Richard that, should he choose to remain at home, Annie would be placed in foster care. Richard left for a week but wanted to return home so that Durena could work outside the home. Richard submitted to a polygraph test on September 25, 2007, hoping that it would clear him of any allegations of abuse, but the polygraph examiner determined Richard had not passed.[3] The next day, on September 26, 2007, OCS took physical custody of Annie.

---

1. We use a pseudonym to protect Annie's privacy.

2. It was later determined that those allegations were mistaken and Richard Tracy was cleared of any wrongdoing.

3. The record suggests there were obvious problems with the polygraph test indicating the test results were not valid.

Over the next eight months, OCS continued its investigation into the alleged abuse of Annie. Durena was allowed supervised visits with Annie, but Richard was allowed no visitation. On April 15, 2008, clinical psychologist Dr. Michael C. Rose performed a psychological sex offender risk assessment on Richard. Dr. Rose found no credible or conclusive evidence that Richard had sexually abused Annie and concluded that Richard presented no risk of sexual abuse. Dr. Rose offered his opinion that OCS's investigation of the case was an "abuse of discretion and overzealous pursuit of confirmatory bias." He recommended immediate reunification of Annie with Richard and "that OCS adopt a more conciliatory and supportive posture toward unification of [Annie] and Mr. and Mrs. Tracy."

Even after OCS received Dr. Rose's report, OCS did not promptly facilitate reunification of Annie and the Tracys. Before Annie was returned home, OCS conducted additional criminal background checks on Durena and Richard, conducted a home search, and requested a second "home study" by Catholic Social Services which included additional interviews. Richard and Durena Tracy were eventually reunited with Annie in June of 2008 and later adopted her.

### B. Procedural History

The Tracys, acting pro se, filed a complaint for damages against OCS on September 24, 2009. The complaint sought reimbursement for attorney's fees they incurred during the CINA proceedings, damages for time lost from work relating to the CINA proceedings, and other expenses. The complaint listed thirteen "[p]arties involved," including the Tracys, four OCS workers, two Alaska State Troopers, one Wasilla Police Department officer, Annie's kindergarten teacher, Dr. Rose, Superior Court Judge Peter Michalski, and an individual from an organization that may have interviewed Annie. The caption of the complaint listed only the State of Alaska, Department of Social Services, OCS as the defendant. The Tracys sent the complaint and summons to the Attorney General in Juneau, the Civil Division of the Department of Law in Anchorage, and to OCS in Anchorage. None of the individual "parties involved" listed in the body of the complaint were named as defendants in the caption or served with the complaint and summons.

OCS responded to the complaint by filing a motion to dismiss. OCS contended that the Tracys' state law tort claims (negligence, perjury, and disregard of facts resulting in emotional distress) were subject to statutory immunity, and the Tracys' federal constitutional claim was not viable because the State cannot be sued under 42 U.S.C. § 1983. In response to OCS's Motion to Dismiss, the Tracys filed a "Request for Summary Judgment." In their request for summary judgment, the Tracys alleged claims of negligence, perjury, falsifying reports, denial of due process and constitutional rights, and denial of visitation. The Tracys specified they were not seeking compensation under the perjury and falsifying reports claims, but rather saw these claims as part of the State's denial of due process. The Tracys requested compensation for OCS's negligence and denial of rights in OCS's dealings with the Tracys as Annie's foster parents. The Tracys clarified that they were "not ... seeking compensation from non-OCS employees," but they argued that OCS employees could be subject to civil action as officials of the State.

In its opposition to the "Request for Summary Judgment," OCS interpreted the Tracys' claim of constitutional violations as a claim under 42 U.S.C. § 1983. The State argued that because OCS, the only named defendant, was not a "person" under § 1983, the Tracys' § 1983 claim must be dismissed. OCS further asserted that Alaska law did not provide recovery for claims of state law negligence or due process violations. Finally, OCS argued that it owed no legal duty of care toward parents and grandparents. Implicit in OCS's argument is the contention that OCS owed no duty to the Tracys in their capacity as foster parents either.

At oral argument, Richard Tracy spoke for the appellants. Richard conceded that the Tracys' objections were to OCS's policies rather than the acts of individual OCS employees. He argued that the Tracys' role as foster parents should be sufficient to estab-

lish a duty from OCS to protect the Tracys' rights. Richard also argued that the State could be sued for constitutional claims, but did not provide support for his contention.

After explaining that he would take the matter under advisement, Superior Court Judge Peter Michalski told the Tracys that "the law [was] very difficult" for them in terms of the issues presented and that they had endured a "terribly upsetting" situation. The court also remarked that Richard was a good person, father, and grandfather, but that the law does not provide a legal remedy for all wrongs.

The court subsequently issued a written order granting OCS's motion to dismiss. The court dismissed the Tracys' negligence claim because it found the State owed no actionable duty of care to grandparents or foster parents in a CINA proceeding. The court dismissed the perjury and false reporting claims on immunity grounds. The court dismissed the § 1983 constitutional claims because the State is not a proper defendant in a § 1983 action and the Tracys named no other defendants.

OCS moved for an award of attorney's fees pursuant to Civil Rule 82, and the court entered final judgement and an award of 20% of the State's attorney and paralegal fees in the amount of $7,897.94.

The Tracys appeal.[4]

## III. STANDARD OF REVIEW

█ A decision to grant a motion to dismiss a complaint under Alaska Civil Rule 12(b)(6) for failure to state a claim upon which relief may be granted is reviewed de novo.[5] We deem all facts alleged in the complaint "true and provable" when reviewing a motion to dismiss.[6]

█ We review an award of attorney's fees under an abuse of discretion standard.[7] We will find an abuse of discretion upon "a showing that the award was arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Dismissing The Tracys' Negligence Claims Against OCS.

█ The Tracys argue that the superior court erred in determining that the State owed them no duty of care. They contend they were owed a duty as foster parents and prospective adoptive parents, and that OCS violated certain provisions of Title 47 of the Alaska Statutes, giving rise to liability. However, they do not present persuasive legal authority for these statements. The Tracys cite to AS 47.17.033(i), which requires OCS employees to undergo training that addresses "the constitutional and statutory rights of children and families that apply throughout the investigation and ... the applicable legal duties to protect the rights and safety of a child and the child's family."[9] The Tracys do not address AS 47.10.960(a), which states, "Failure to comply with a provision of this title does not constitute a basis for civil liability for damages," nor do they address its application as a bar to civil suits for alleged violations of Title 47.

---

**4.** On appeal to this court, the Tracys nominally raised several new issues. The Tracys included the Alaska Constitution in their "Authorities Principally Relied Upon" and briefly argued in their reply brief that denial of civil rights is a violation of the State constitution. The Tracys also included a breach of contract claim, arguing that the existence of their foster care agreement with the State created a duty of care owed to the Tracys by the State. The Tracys also raised a procedural claim and a claim of judicial misconduct. Because all of these claims were raised for the first time on appeal, we decline to address them. *See Parks v. Parks*, 214 P.3d 295, 300 n. 12 (Alaska 2009) ("We do not consider claims raised for the first time on appeal, absent plain error."); *Matter of H.C.*, 956 P.2d 477, 480 n. 7 (Alaska 1998) (citing *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 153 n. 4 (Alaska

1984) (holding that "even though the issue was included in appellant's points on appeal statement, the issue was abandoned because appellant failed to adequately brief it")).

**5.** *McGrew v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 106 P.3d 319, 322 (Alaska 2005).

**6.** *Id.*

**7.** *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007).

**8.** *Id.* (internal citation omitted).

**9.** AS 47.17.033(I).

■ Alaska case law establishes that there exists no actionable duty on the part of OCS towards grandparents, legal guardians, foster parents, or prospective adoptive parents under the circumstances of this case. In *Karen L. v. State, Department of Health and Social Services, Division of Family and Youth Services*,[10] for example, we held that although the emotional harm resulting from improper CINA proceedings was foreseeable, "allowing aggrieved parents to sue the State for actions or inactions during the course of a CINA investigation or proceeding would greatly burden society's already scarce social worker resources. Social workers should be helping children in need of aid. They should not be spending their time in burdensome collateral litigation."[11] This holding was reiterated in *McGrew v. State, Department of Health and Social Services, Division of Family and Youth Services*,[12] where we explained that "the [S]tate and the social workers did not owe the mother an actionable duty of care."[13]

Here, the superior court correctly concluded that the State did not owe a duty of care based on the Tracys' status as grandparents or foster parents. Furthermore, AS 41.10.960(a) expressly provides that OCS's failure to comply with Title 47 does not constitute a basis for civil damages.

## B. The Court Did Not Err In Dismissing The Tracys' § 1983 Claim.

■ As explained above, the Tracys filed a complaint for damages against OCS and the caption listed only OCS as the defendant. Among other claims, the Tracys alleged a denial of their due process rights and an infringement of their civil rights by the State. Both OCS and the superior court interpreted the Tracys' constitutional claims as a claim under 42 U.S.C. § 1983. The superior court dismissed the § 1983 claim because OCS is not a "person," and therefore not a proper defendant under § 1983. In doing so, the court did not advise the Tracys what steps they might have taken to amend their complaint to name a proper defendant. We asked for supplemental briefing on this issue to evaluate whether the superior court abused its discretion in not giving further assistance to the Tracys, who are pro se litigants. We conclude the court did not abuse its discretion.[14]

■ The United States Supreme Court has held that the state and state officers acting in their official capacity are not persons under § 1983, and therefore cannot be sued for damages under § 1983.[15] In the body of their complaint, the Tracys listed several individuals as "[p]arties involved" but ultimately sued only one party—OCS. Therefore, the superior court correctly dismissed the Tracys' § 1983 claim against OCS. However, even if the individuals listed as "parties involved" had been named defendants, the Tracys evidently intended to name them in their official, not individual, capacities.[16] Had the Tracys amended their com-

10. 953 P.2d 871 (Alaska 1998).

11. *Id.* at 877 (internal citations omitted).

12. 106 P.3d 319 (Alaska 2005).

13. *Id.* at 323 ("We recognize here, as we did in *Karen L.*, that 'it is to be expected that any litigation, and certainly a CINA proceeding in which the child is taken from its [relatives] ... will cause the [relatives] some distress. That does not mean that the distress should be actionable.' *Karen L.* establishes that DFYS does not owe a parent an actionable duty of reasonable care in a CINA proceeding. *Karen L.* therefore precludes the grandparents' negligence claim in this case." (quoting *Karen L.*, 953 P.2d at 876) (alteration in original)).

14. It is well-established that "pleadings of pro se litigants should be held to less stringent standards than those of lawyers," and that "the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish." *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (italics omitted). However, requiring a judge "to instruct a pro se litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side." *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989).

15. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

16. In their appeal brief, the Tracys explain, "This case concerns actions by officials and employees of the State of Alaska that violate the ... United States Constitution. This Court has jurisdic-

plaint to sue the listed individuals in their official capacities, the complaint still would have been properly dismissed. Because individuals acting in their official capacity are immune from suit under § 1983, the Tracys would not have been helped by amending their pleading.[17] The superior court did not abuse its discretion in not advising the Tracys that they might amend their complaint, nor did it err by dismissing the Tracys' § 1983 claim.

### C. It Was Error To Award Attorney's Fees To The State.

The Tracys also challenge the superior court's award of attorney's fees. While this argument is not fully developed, we consider it because the Tracys have proceeded pro se, and because it appears that it was plain error for the court not to have applied AS 09.60.010(c)(2) [18] and case law interpreting 42 U.S.C. § 1988's attorney's fee provision [19], at least with respect to the Tracys' § 1983 claim. For example, in *DeNardo v. Johnstone*, the United States District Court for the District of Alaska described the care a court should exercise in determining whether to award fees against an unsuccessful § 1983 pro se litigant:

> Nevertheless, before awarding fees to a defendant, the court should be able to find that the plaintiff, if he appears pro se, knew or should have known that his case was without merit. It is not enough that the court is able to summarily dispose of the case without trial. Bearing in mind[ ] Congress's desire to encourage those whose rights have been infringed[ ] to pursue those rights in the courts, a district court should be particularly hesitant to award fees against an unrepresented plaintiff. In such a case, the court must consider the pro se plaintiff's ability to recognize the merits or demerits of his or her case. In practice, the court should refrain from awarding fees against a pro se plaintiff unless it can find that a reasonable lay person, having knowledge of the facts known to the plaintiff, would have recognized that his or her claim was without merit. Such a finding is most appropriate where the court finds that the plaintiff is proceeding in bad faith or for an improper motive.[20]

Alaska Statute 09.60.010(c)(2) is of similar effect: the superior court "may not order a [non-prevailing] claimant to pay the attorney['s] fees of the opposing party devoted to claims concerning constitutional rights" where the claim is not frivolous.

 On the record before us, it is clear that the Tracys were not proceeding in bad faith or for any improper motive. Even OCS's retained psychologist, Dr. Michael

---

to review whether a systemic atmosphere exists within the Office of Children's Services that condones violations of constitutional rights...." The Tracys argue that "[s]ince individuals (in their [respective] official capacities) who are sued under 1983 Civil Rights violations are represented by the Attorney General's office and given immunity from cases of misrepresentation, slander, perjury, or negligence, this technicality should not be used by the state to dismiss this case." Finally, Richard explained at oral argument that, although he would have liked to, he knew that he could not sue OCS employees in their individual capacity without showing malice on their part, so he instead sued OCS (the State) based on its policies. These statements, though not entirely clear, indicate that the Tracys understood the difference between suing State employees in their official versus individual capacities, and that the Tracys determined to name only OCS as defendants.

**17.** *Will*, 491 U.S. at 71, 109 S.Ct. 2304.

**18.** Alaska Statute 09.60.010(c)(2) reads: "In a civil action or appeal concerning the establish-

ment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court ... may not order a claimant to pay the attorney fees of the opposing party . devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved."

**19.** 42 U.S.C. § 1988(b) (2006) provides: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."

**20.** 772 F.Supp. 462, 465–66 (D.Alaska 1991) (internal citations and italics omitted).

Rose, explained that in his opinion, OCS's investigation of the allegations of abuse was an "abuse of discretion and overzealous pursuit of confirmatory bias." The superior court also acknowledged that the Tracys had endured a "terribly upsetting" situation.

A major part of the Tracys' claims against OCS involved their claims that OCS violated their constitutional or civil rights. Though they were unsuccessful on these constitutional claims, there is nothing in the record before us to suggest that their claims were asserted in bad faith or for any improper motive. The superior court should not have awarded attorney's fees against the Tracys at least with respect to their constitutional claims. We therefore vacate the attorney's fees award and remand. On remand, if the State elects to seek Rule 82 attorney's fees for the non-constitutional and non-civil rights claims, the superior court may consider Rule 82(b)(3) [21] factors to determine whether there are grounds to vary any attorney's fees award.

## V. CONCLUSION

We AFFIRM the superior court's dismissal of the Tracys' negligence, constitutional, and other claims. We VACATE the award of attorney's fees, and REMAND for further proceedings.

CHRISTEN, Justice, not participating.

---

21. "The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed ... the court determines a variation is warranted...."