205 A.2d 583.

CARMILLE ROMANO vs. ROBERT V. ROMANO, *individually and as Adm'r of the Estate of Dominic R. Romano.*

DECEMBER 14, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

POWERS, J. This is a bill in equity seeking to impress a lien on property purchased with funds, a portion of which was derived from the sale of four lots in which the complainant allegedly held the equitable title. The cause was heard on amended bill, answer and proof by a superior court justice who gave decision for the complainant and entered a final decree in accordance therewith. It is before us on the respondent's appeal therefrom.

It appears from the record that respondent is the son of
Dominic (Domenic) R. Romano and grandson of complain-
ant, the mother of Dominic. Dominic R. Romano died in-
testate, February 15, 1962, holding legal title to a certain
parcel of land and the buildings thereon situated on the
easterly side of Williston Way and the southerly side of
Maplewood Drive, in the city of Pawtucket.

It further appears that Dominic purchased this property
on October 11, 1960 paying $16,000. As part of this con-
sideration, he withdrew the sum of $4,300 from the Paw-
tucket branch of the Rhode Island Hospital Trust Company
where the identical amount had been deposited to his ac-
count by him on March 31, 1960. Such deposit consisted
of a check which, it is undisputed, was received by Dominic
as consideration for the sale of four lots of land to Walter
J. Pulawski on March 23, 1960. These lots are recorded in
the land records of the city of Pawtucket as numbers 124,
125, 126 and 127 on Trento plat No. 2.

The amended bill of complaint avers, and from the oral
and documentary evidence the trial justice found, that the
$4,300 received by Dominic for the sale of the lots was held
by him as trustee for complainant. That the money in
question was properly traced from the sale to the deposit
in the Pawtucket branch of the Rhode Island Hospital
Trust Company, withdrawn therefrom and applied as part
of the consideration for the purchase of the land and build-
ings on Williston Way and Maplewood Drive, is not open
to question. The respondent does contend, however, that
the four lots which were in the name of Dominic and sold
by him to Walter J. Pulawski were not subject to any equit-
able interest in complainant.

It is undisputed that complainant was the wife of Vito
Romano who died December 14, 1960. On August 29, 1921,
complainant and her husband acquired thirteen lots, includ-
ing the four lots in controversy. Apart from the lots that

are the subject of the instant proceedings, the record discloses a history of transfers to their various children about which there is considerable testimony in the transcript. It would serve no purpose to extend this opinion with a narration of these transactions. Suffice it to say that they served as background in aiding the superior court justice in making his ultimate findings.

The record does disclose that on May 31, 1951, complainant and her husband conveyed the subject lots to their son Victor who was in the service, unmarried and at that time evincing an intention of remaining single. No consideration is recited and the parties are agreed that none was given. Subsequently, Victor did marry and on December 31, 1957, conveyed the lots to Dominic who at that time was married. The latter, however, did not record the transfer until March 25, 1960, at which time he had become divorced.

The complainant testified by way of deposition as she is approximately 78 years of age and, injured in a fall, was suffering from concussion. Further, she has difficulty with the English language and her testimony, given through an interpreter, is more or less vague and, at times, rambling. Since a number of other lots were owned by her and her husband and from time to time were the subject of transactions between members of the family, it is difficult to determine whether her testimony, at times, relates to the four lots which are the subject of the instant proceedings or other property owned by her and her husband.

She did, however, state that the lots in question were transferred from Victor "Because he went away into the service" to Dominic because he was the oldest. In this connection she testified that Dominic asked her permission to sell the lots so that he could buy a home in which she could live and that if she decided not to live with him he would give her the money; that she never intended to make

a gift of the lots; and that shortly before Dominic died he assured her that she would get her money. The complainant never lived in the house Dominic acquired.

The complainant's son Frank Romano testified that shortly before the lots had been transferred from complainant and her husband to the son Victor, there was a family conference at which it was decided to make the transfer and that Victor would hold the lots in trust for his parents; that there were present, as well as himself, complainant, Dominic, Victor, and complainant's daughter Anne Romano. He further testified that while Victor was in the service, he married and it was decided that the lots should be transferred to Dominic who would also hold them for their parents. He corroborated complainant's testimony that, in his presence, Dominic assured his mother, after Dominic's sale of the lots to Pulawski, that she would get her money. Anne Romano Penza, complainant's daughter, testified and supplemented Frank's testimony in general corroboration.

The former Mrs. Dominic Romano, respondent Robert V. Romano and his wife Martha testified generally in opposition to complainant's contention that Dominic held the lots for the benefit of his parents but, in a number of instances, were forced to qualify their testimony. The main thrust of their evidence was to the effect that Dominic had always paid the taxes on the property in question.

Mildred R. Rondeau, bookkeeper for a number of years for Dominic's business, testified that complainant had always paid the taxes. She stated that complainant would bring the tax bills and money to Dominic, together with her social security check and that of her husband. At times, Mrs. Rondeau testified, complainant would have insufficient funds to meet the taxes and Dominic would then make up the difference. She added, however, that in such instances, complainant would always reimburse Dominic.

The trial justice reviewed the testimony of the several witnesses, drew comparisons therefrom, and in connection therewith made specific findings of fact. He found that complainant and her husband had conveyed the subject property to Victor without consideration and he received and held the property for the use and benefit of his parents; that Victor later conveyed to Dominic, also without consideration, because of a change in Victor's circumstances and that Dominic likewise held the property in trust; that Dominic recognized his obligation in the premises and first obtained complainant's consent before selling the property to Pulawski; and that he assured his mother that she would have a home with him or her money if she needed it.

He further found that the money Dominic received from the sale of the property was directly traceable to the home purchased by Dominic and, stating that complainant had established her equitable title by clear and convincing proof, granted the prayer for relief.

The complainant's husband having predeceased their son Dominic, it was the decision of the court that the entire proceeds from the sale of the lots, namely, $4,300, were the property of complainant, and the decree entered pursuant to said decision imposed a lien in that amount for the benefit of complainant on the property acquired by Dominic. From this decree respondent seasonably claimed an appeal.

The reasons of appeal assign as error that the decree is against the law, the evidence and the weight thereof.

In his oral argument and brief, respondent makes three contentions: First, that the conveyance of the four lots to Victor was a gift from parents to son and the trial justice misconceived and overlooked material evidence in reaching a contrary conclusion; second, that the conveyance from Victor to Dominic was not subject to a trust in favor of their parents; and, lastly, that assuming the finding of the

trial justice to the contrary was correct it was nevertheless error to hold that complainant was entitled to claim all the proceeds, since she had but a half interest in the trust.

It is well settled that the findings of the trial justice sitting in equity are entitled to great weight and will not be disturbed unless he is clearly wrong and has overlooked or misconceived material evidence. *Chase* v. *Chase,* 78 R. I. 278; *Szlatenyi* v. *Cleverley,* 72 R. I. 253. The respondent recognizes this principle but argues that where there is a conveyance from parents to a child, without consideration, the law presumes a gift in the absence of clear and convincing evidence to the contrary, citing *Larocque* v. *Larocque,* 74 R. I. 72, *DiLibero* v. *Pacitto,* 71 R. I. 361, and *Reynolds* v. *Blaisdell,* 23 R. I. 16.

We are in full accord with these decisions and the principles laid down therein are fully applicable here. The cases are, however, readily distinguishable on their facts from those with which the trial justice was confronted in the instant cause.

Nevertheless, respondent argues, the facts as related by complainant and her witnesses are so far fetched as to fall short of the clear, full and convincing evidence that is required. Far fetched though they may seem to respondent, they are nevertheless perfectly rational and credible and they were stated by witnesses whom the trial justice had an opportunity to observe as he evaluated the import of their testimony and the sincerity with which it was given. A careful consideration of it in cold print fails to persuade us that the trial justice was clearly wrong.

In what apparently is designed to demonstrate that the trial justice misconceived material evidence, respondent stresses that complainant clearly stated that the conveyance to Victor was a gift. In this regard he is referring to the following passage as it appears in the deposition: "Q. Ask her if she knows why this land was put in Victor's

name? A. Well, she just felt, you know, he was generous and wanted to let Victor have land."

As previously noted, there were other lots of land owned by complainant and her husband which were transferred to different members of the family, three of them being conveyed to Victor. For all that can be determined by complainant's confused testimony, it is quite reasonable that these three lots, and not the subject property, were in her mind when she gave the answer on which respondent places so much emphasis.

Apropos of these three lots, being numbered 99, 100, 101, it is pertinent to note that they were later conveyed by Victor to his sister Anne and her husband for a substantial consideration. The trial justice made note of this and it is significant because it renders logical the proposition that Victor conveyed the four lots in issue to Dominic without consideration for the reason that he held only the legal title.

Although respondent argues his first two contentions separately, they are basically tied together. We find them to be without merit.

The respondent's final contention, however, raises a novel point. He acknowledges that complainant and her husband acquired and held the lots in question as joint tenants, but argues that with the conveyance to Victor the four incidents of a joint tenancy were broken and that, if there were a resulting trust, complainant was beneficiary of only a half interest. In support of this argument, he cites 38 Minn. L. Rev. 467, and 4 Scott, Trusts (2d ed.), §407, p. 2931.

We have carefully read these references and fail to find that they are of any benefit to respondent. The first citation is an excellent discussion of the characteristics incidental to a joint tenancy, but it is inapplicable to the problem at hand. Nor of any greater assistance are the comments of the learned text writer to which our attention is called. Indeed, included in the language quoted by re-

spondent is the following: "Where the beneficiary of a resulting trust dies intestate his interest passes to his heirs or next of kin in the same way in which the corresponding legal interest would pass. Where his interest is an interest in realty, it descends to his heirs * * *."

The interesting feature of the quoted language is that which has reference to the extent of the equitable interest as being commensurate with the legal title conveyed. In 2 Scott, Trusts (2d ed.), §143, p. 1005, the writer also states, "At common law it was held that there might be a joint tenancy of equitable estates as well as of legal estates," although no case is cited.

Nor have we been able to discover any case exactly bearing on the point. However, in our judgment the separation of the legal and equitable titles did not result in diminishing the extent of complainant's interest and the right of survivorship remained.

Lastly, the respondent has cited certain authorities which are concerned with the statutes of fraud and of wills. However, they are without application in these proceedings since the complainant is not claiming her husband's interest by virtue of an implied conveyance from him. Rather, this interest vested in her based on the incidents of joint tenancy which include right of survivorship.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Joseph A. Capineri,* for complainant.

*J. Frederick Murphy,* for respondent.