Susan J. WARE, Appellant,

v.

Brandie W. WARE, Appellee.

No. S–11687.

Supreme Court of Alaska.

June 1, 2007.

Susan J. Ware, pro se, Anchorage.

Tucker S. Thompson, Soldotna, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

In this intra-family dispute, two siblings vie for control of the family homestead. Susan Ware, a *pro se* litigant, sued her brother Brandie Ware on the theory that he unlawfully exerted his influence and will over their eighty-seven year old mother, Margaret, and convinced Margaret to give him the family homestead. Brandie moved for summary judgment, contending that Susan had not produced any evidence beyond her personal conviction that Margaret would not have given the land to Brandie unless she had been unduly influenced. The superior court granted Brandie's motion for summary judgment and awarded Brandie attorney's fees in excess of the statutory minimum. Because Susan has not provided any evidentiary support for her claim of undue influence, we affirm the superior court's grant of summary judgment. We also affirm the superior court's award of enhanced attorney's fees because the award was within the court's discretion.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 1998 John Wesley Ware and his wife Margaret placed their homestead in a revocable living trust known as the Ware Family Trust. The homestead encompasses several acres of land, five houses, and multiple unimproved lots on the Kenai Peninsula. John passed away in April 1999. Upon John's death, Margaret became owner of the family homestead. In March 2000, when Margaret was eighty-three years old, she transferred the homestead and other real and personal property into another revocable living trust entitled the Margaret Ware Revocable Living Trust (Trust).[1] Margaret was named both grantor and trustee. Her four children—Roger, Brandie, Susan, and Lance—were the named beneficiaries. She had previously executed a will in which she provided that if her husband were to die before she did, the "home" would go to her four children.

The terms of the trust divided the property fairly evenly. Brandie, Roger, and Lance all own homes on the property, and under the terms of the trust they would individually acquire the land on which their homes sit. Susan would acquire the grantor's interest in the family home, as well as a Civil War powder horn. Roger would receive the family jewelry and Brandie would get another powder horn.

In February 2003, however, Margaret, in her capacity as trustee of the Trust, conveyed the entire homestead property to Brandie for ten dollars. Margaret signed the statutory warranty deed and recorded it. Upon receiving title to the property, Brandie quit-claimed his mother a life estate in the property.

Margaret sent a notarized letter to her son Lance in which she explained her decision to sell the property to Brandie:

Lance,

You must contact Brandie to converse about any property. My entire homestead property was sold to Brandie Ware. I am tired of being bothered by you scaring me into saying things like the land is mine. I told you on the telephone you should contact Brandie. I want you to know I sold all the land to Brandie. No more stress from you.

Margaret Ware

### B. Proceedings

After Margaret deeded the property to Brandie, Susan sued Brandie on the grounds that he had exerted undue influence over their mother, and that he had been unjustly enriched as a result. Brandie denied the allegations and counter-claimed in order to quiet title.

Susan moved for an injunction in April 2004, requesting that the court prevent Brandie from "taking any more actions, including property transfers, of the Ware Homestead, during the pendency of this matter, without notifying the Court, Ms. Ware, and any interested parties." The court denied Susan's motion for injunction because "it is not clear to the court what activities Plaintiff wishes to prohibit or require of Defendant, and because Plaintiff does not clearly indicate what sort of irreparable harm she believes she will suffer without entry of a preliminary injunction." However, the court invited Susan to file a new motion specifically addressing these issues.

In July 2004 Brandie moved for summary judgment, arguing that Susan had alleged no facts to support her claim of undue influence. Rather, he argued, "[s]he has simply opined that she doesn't believe that her mother would deed the property to Brandie unless he unduly influenced her." Brandie cited Margaret's deposition, in which Margaret testified that she had not been pressured into transferring the deed and that it was her idea to transfer title to Brandie. Susan replied, "The fact that the parties' mother turned over everything to one child in the absence of a satisfactory explanation sufficiently stands out as to present a prima facie case of undue influence." The court granted

---

1. Brandie Ware has asserted that the transfer of property from the Ware Family Trust to the Margaret Ware Revocable Living Trust was invalid because it included an incorrect legal description of the property.

Brandie's motion for summary judgment, finding no genuine issue of material fact regarding Margaret's competence or undue influence, and dismissed Susan's complaint with prejudice.

In addition, the court ordered Susan to pay Brandie's attorney's fees pursuant to Alaska Civil Rule 82, including enhanced fees under Rule 82(b)(3).

Susan appeals both the summary judgment decision and the award of augmented attorney's fees.

## III. STANDARD OF REVIEW

 We review a grant of summary judgment *de novo,* applying our independent judgment[2] and adopting the rule "that is most persuasive in light of precedent, reason, and policy."[3] Summary judgment "is affirmed if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[4] All reasonable inferences of fact are drawn in favor of the nonmoving party and against the moving party.[5] "The moving party has the burden of proving the absence of issues of material fact."[6] Once the moving party has made a prima facie showing of the absence of a genuine issue of

material fact, the burden shifts to the nonmoving party to show that it "can produce admissible evidence reasonably tending to dispute the movant's evidence."[7]

 We review an award of attorney's fees under an abuse of discretion standard.[8] "The trial court has broad discretion in awarding attorney's fees; this court will not find an abuse of discretion absent a showing that the award was arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Granting Summary Judgment to Brandie on Susan's Undue Influence Claim.

#### 1. *Inter vivos* transfers of property from parents to children are presumptively gifts.

 While we have not previously addressed *inter vivos* transfers of property from parents to children, "a considerable body of precedent ... holds that an unexplained transfer of property from a parent to a child raises a rebuttable presumption, or inference, that a gift was intended."[10] We

2. *Charles v. Interior Reg'l Hous. Auth.,* 55 P.3d 57, 59 (Alaska 2002).

3. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. *Dayhoff v. Temsco Helicopters, Inc.,* 848 P.2d 1367, 1369 (Alaska 1993).

5. *Id.*

6. *Charles,* 55 P.3d at 59.

7. *Guerrero v. Alaska Hous. Fin. Corp.,* 123 P.3d 966, 971 (Alaska 2005) (quoting *Charles,* 55 P.3d at 59).

8. *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt,* 38 P.3d 528, 531 (Alaska 2001).

9. *Id.* (quoting *Power Constructors, Inc. v. Taylor & Hintze,* 960 P.2d 20, 44 (Alaska 1998)).

10. *Dixon v. Bradsher,* 779 S.W.2d 727, 732 (Mo. App.1989) (citing 94 A.L.R. 608, 612 (1978)). *See also U.S. v. Jepsen,* 268 F.3d 582, 585 (8th Cir.2001) (explaining that Arkansas law presumes gift when donor registers legal title in family member's name); *Morgan v. Wright,* 156

Colo. 411, 399 P.2d 788, 791 (1965); *Zack v. Guzauskas,* 171 Conn. 98, 368 A.2d 193, 195 (1976); *Sullivan v. American Tel. & Tel. Co.,* 230 So.2d 18, 20 (Fla.Dist.App.1969); *Almeida v. Almeida,* 4 Haw.App. 513, 669 P.2d 174, 178–79 (1983); *In re Marriage of Kendra,* 351 Ill.App.3d 826, 286 Ill.Dec. 812, 815 N.E.2d 22, 25 (2004); *Matter of Estate of Kieras,* 167 Ill.App.3d 275, 118 Ill.Dec. 195, 521 N.E.2d 263, 266 (1988); *Barth v. Severson,* 191 Iowa 770, 183 N.W. 617, 624 (1921); *Rakhman v. Zusstone,* 957 S.W.2d 241, 244 (Ky.1997); *Brandenburg v. Harshman,* 193 Md. 104, 65 A.2d 906, 908–09 (1949); *Smith v. Smith,* 215 Mich. 556, 184 N.W. 501, 503 (1921); *Stahn v. Stahn,* 192 Minn. 278, 256 N.W. 137, 137 (1934); *Sunflower Farms, Inc. v. McLean,* 238 Miss. 168, 117 So.2d 808, 813 (1960); *Jones v. Jones,* 201 S.W. 557, 558 (Mo.App.1918); *Detra v. Bartoletti,* 150 Mont. 210, 433 P.2d 485, 487–88 (1967); *Fischer v. Wilhelm,* 140 Neb. 448, 300 N.W. 350, 351 (1941); *Peppler v. Roffe,* 122 N.J. Eq. 510, 194 A. 548, 550 (1937); *Durward v. Nelson,* 481 N.W.2d 586, 588 (N.D.1992); *John Deere Indus. Equip. v. Gentile,* 9 Ohio App.3d 251, 459 N.E.2d 611, 616 (1983); *Ingersoll v. Ingersoll,* 263 Or. 376, 502 P.2d 598, 600 (1972); *Fenderson v. Fenderson,* 454 Pa.Super. 412, 685 A.2d 600, 606 (1996); *Romano v. Ro-*

adopt this majority view that transfers of property, including real property, money, and cash advances, from parent to child are presumptively gifts.

### 2. An *inter vivos* gift may be void if the grantor was unduly influenced or lacked capacity to make the gift.

 A gift from parent to child may be void if obtained by improper means or undue influence.[11] When examining the relationship between parent and child for proof of undue influence, we will consider "the effect of the influence which was, in fact, exerted upon the mind of the [donor], considering his physical and mental condition, the person by whom it was exerted, the time and place and all the surrounding circumstances...."[12] We have previously held, in the context of testamentary gifts, that a party challenging the validity of a gift under a theory of undue influence must produce proof of "coercion or duress which would act as a dominating power over the mind and act of a [donor]."[13] Additionally, we have held that a testamentary gift may be void if the grantor lacked the mental capacity to understand the nature and extent of the gift he or she is making.[14] We see no reason not to apply this reasoning to an *inter vivos* gift such as the one in this case.

 In the present case, Margaret gave Brandie the land in exchange for ten dollars. The first issue we must resolve, then, is whether Margaret intended to gift the land to Brandie, or to sell it. To determine whether an individual has gratuitous intent we ask whether the parties had a close relationship; whether the plaintiff failed to request compensation; and whether the services performed were the sort one would expect to receive as a mere gratuity.[15] Margaret and Brandie share a close mother-son relationship. She testified at her deposition that she decided, on her own, to transfer the homestead to Brandie, and that she wanted him to keep it. She stated that even if Brandie were willing to sign back the deed to her, she would decline. These facts indicate that Margaret's behavior meets the tests for gratuitous intent.

The only contrary indication is that Brandie paid Margaret ten dollars for the property and Margaret referred to having sold the property to Brandie. While the purpose of this payment is not clear, the amount is so nominal that it should not invalidate the gratuitous nature of Margaret's act.

Based on this analysis, the transfer from Margaret to Brandie is presumptively a gift. In order to challenge the gift, Susan bears the burden of proving that Brandie unduly influenced Margaret to deed him the property. She has attempted to meet this burden by arguing (1) that Brandie unduly influenced Margaret by coercing her into giving him the property; (2) that Brandie breached a fiduciary duty to Margaret; and (3) that Margaret lacked the mental capacity to make the gift. We analyze each argument in turn.

### a. Susan failed to meet her burden of producing evidence that Brandie coerced Margaret into giving him the property.

 The party challenging a gift has the burden of showing that the grantor "was

*mano*, 99 R.I. 33, 205 A.2d 583, 586 (1964); *Jocoy v. Jocoy*, 349 S.C. 441, 562 S.E.2d 674, 675 (S.C.App.2002); *Masterson v. Hogue*, 842 S.W.2d 696, 697 (Tex.App.1992); *Lappin v. Lucurell*, 13 Wash.App. 277, 534 P.2d 1038, 1041 (1975); *Bailey v. Banther*, 173 W.Va. 220, 314 S.E.2d 176, 179 (1983); *Estate of Rohde*, 8 Wis.2d 50, 98 N.W.2d 440, 441 (1959); *Kelsey v. Anderson*, 421 P.2d 163, 164 (Wyo.1966).

**11.** *Kieras*, 118 Ill.Dec. 195, 521 N.E.2d at 266; *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn.1977) (holding that, while the "normal relationship between a mentally competent parent and an adult child is not per se a confidential relationship and raises no presumption of the invalidity of a gift from one to the other," such a presumption of

invalidity arises with a "showing that there were present the elements of dominion and control by the stronger over the weaker, or . . . a showing of senility or physical and mental deterioration of the donor or that fraud or duress were involved . . .").

**12.** *Crittell v. Bingo*, 36 P.3d 634, 639 (Alaska 2001).

**13.** *Id.* (quoting *Paskvan v. Mesich*, 455 P.2d 229, 234 (Alaska 1969)).

**14.** *Id.*

**15.** *Sparks v. Gustafson*, 750 P.2d 338, 342–43 (Alaska 1988).

virtually compelled to make a [gift] that [she] would not have made if left to the free exercise of [her] own judgment and wishes." [16]

Margaret robustly denied that she was unduly influenced by Brandie. Indeed, she testified that the transfer to Brandie had been her idea. Susan concedes that her mother decided to give the property to Brandie rather than Susan "because she felt Susan couldn't take care of the place." While Susan may disagree with her mother's assessments that Susan is not hardy enough to "put up with the hardships of living [as Margaret did] with a wood stove for heat and hot water" or that she cannot afford to pay the taxes on the house, these facts do not show compulsion by Brandie.

Susan asserts that Brandie coerced their mother into giving him the property by convincing her that it was necessary in order to avoid being placed in a nursing home. Susan's only proffered evidence, however, is that "Margaret was told by Roger that Lance wanted to put her in a nursing home." This convoluted statement is hardly sufficient to implicate Brandie in a scheme to unduly influence Margaret.

Thus, even if the facts alleged by Susan are true, they do not show compulsion by Brandie.

### b. Susan provided no evidence that Brandie owed fiduciary duties to their mother.

▮▮▮▮ Susan asserts that Brandie and Margaret shared a confidential relationship, and that Brandie used his power over their elderly mother to unduly influence her. A confidential relationship exists "when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." [17] We have recognized confidential or fiduciary relationships "between business partners or co-owners, between professionals such as lawyers and their clients, and in relationships involving trusts and guardianships." [18] Although the existence of a confidential relationship alone does not create a presumption of undue influence, when a principal in a confidential relationship benefits from that relationship, a presumption of undue influence arises.[19] Accordingly, if Brandie and Margaret shared a confidential relationship, the transfer of property would create a rebuttable presumption of undue influence.

▮▮▮ However, there is no evidence of a confidential or fiduciary relationship between Brandie and Margaret. The mere fact of a parent-child relationship does not necessarily create fiduciary duties.[20] In the case of *Salvner v. Salvner*,[21] a father who wanted to recover property he gave to his children asserted that he had a fiduciary relationship with them.[22] The Michigan Supreme Court rejected this claim, explaining that although the children assisted their father in many ways, "the record falls far short of establishing that [the father] was governed by their advice or that he depended on them in the making of decisions concerning his business affairs, or otherwise."[23] The court concluded that the father, "notwithstanding his physical condition, was able to determine for himself what he wished to do and to refuse to act against his own inclinations. What defendants did to assist him amounted to no

---

**16.** *Crittell*, 36 P.3d at 639.

**17.** *Paskvan*, 455 P.2d at 229.

**18.** *Munn v. Thornton*, 956 P.2d 1213, 1220 (Alaska 1998) (referring to *Paskvan*, 455 P.2d at 232 (partners or co-owners); *Cummings v. Sea Lion Corp.*, 924 P.2d 1011, 1021 (Alaska 1996) (lawyers and clients); *Alaska State Employees Assoc. v. Alaska Pub. Employees Assoc.*, 825 P.2d 451, 459 (Alaska 1991) (trusts and guardianships)).

**19.** *See, e.g., Paskvan*, 455 P.2d at 233 ("[W]hen the principal or sole beneficiary under a will, who had a confidential relationship with the testator, participated in the drafting of the will, then a presumption of undue influence arises.").

**20.** *Salvner v. Salvner*, 349 Mich. 375, 84 N.W.2d 871, 875–76 (1957); *In re Estate of Kieras*, 167 Ill.App.3d 275, 118 Ill.Dec. 195, 521 N.E.2d 263, 266 (1988).

**21.** 349 Mich. 375, 84 N.W.2d 871 (1957).

**22.** *Id.* at 875.

**23.** *Id.*

more than would be prompted normally by the existing relationship." [24]

Similarly, Brandie's filial relationship with Margaret does not create any inherent fiduciary duties. Susan failed to provide evidence that Margaret was controlled by Brandie or depended on Brandie in making business decisions. Indeed, Margaret asserted in her deposition that she made her own decisions regarding the property, without advice from any of the children. While the record shows evidence of Brandie helping Margaret by checking her oil, cutting wood, and purchasing a new washing machine for her, these activities, like those of the children in *Salvner*, do not change the relationship from parent-child to that of a fiduciary. There is no evidence of a confidential relationship in this case.

Susan relies on a Third Circuit decision, *Francois v. Francois*,[25] to support her assertion that Brandie owes Margaret confidential duties, but that case is of no assistance to her. In *Francois v. Francois* a husband claimed to have been defrauded by his wife. Although the court evaluated the husband's claim of unjust enrichment, it noted that marriage does "not automatically give rise to a confidential relationship." [26] Rather, a confidential relationship "arises when one party places confidence in the other with a resulting superiority and influence on the other side." [27]

Susan has offered no evidence that Brandie held a superior, influential position with their mother. She simply states that Brandie "benefitted handsomely from his relationship with his mother to the detriment of her and his three siblings." This assertion does not prove a confidential relationship. The superior court did not err in finding that no issue of material fact existed with regard to a confidential relationship between Brandie and Margaret.

### c. Susan failed to provide evidence that Margaret lacked the mental capacity to make the gift.

Testamentary capacity is determined by analyzing whether the testator had sufficient mental capacity to understand (1) the nature and extent of her property; (2) the natural or proper objects of her bounty; and (3) the nature of her testamentary act.[28] In the case of an *inter vivos* gift, we can similarly ask whether the donor had sufficient capacity to understand the nature and extent of her property, the object of her bounty, and the nature of her donative act.

We agree with the superior court that Susan did not adequately demonstrate that her mother was mentally incompetent. Margaret's deposition testimony shows no indication of an inability to understand the nature and extent of her property or the donative nature of her act. Moreover, she testified that she was not influenced by Brandie, and that she acted of her own accord. Because Susan failed to provide evidence rebutting Margaret's competence, she did not meet her burden in challenging the gift.

While it is unclear whether the superior court considered Margaret's age in assessing her competence, we reject Susan's assertion that age alone is an indicator of incompetence. Susan argues that the superior court abused its discretion when it failed to consider Margaret's age in determining whether Brandie unduly influenced Margaret. She contends that Margaret's age made her more susceptible to Brandie's alleged influence. Susan attempts to prove undue influence by implying that her mother is particularly vulnerable to manipulation, emphasizing that Margaret is elderly, widowed, and afraid of being placed in a nursing home. Susan argues that, pursuant to the subjective standard for undue influence we enunciated in *Crittell v. Bingo*, we must consider Margaret's age as one of her "personal strengths and weaknesses" in assessing whether she

---

**24.** *Id.*

**25.** 599 F.2d 1286 (3d Cir.1979).

**26.** *Id.* at 1292.

**27.** *Id.* (quoting *Yohe v. Yohe*, 466 Pa. 405, 353 A.2d 417, 421 (1976)).

**28.** *Crittell v. Bingo*, 36 P.3d 634, 638 (Alaska 2001) (citing *In re Estate of Kraft*, 374 P.2d 413, 416 (Alaska 1962)).

was unduly influenced.[29] The superior court was silent regarding Margaret's age.

We reject the assumption that an older person is presumptively incompetent. Susan has provided no evidence showing that her mother's age had any impact on her ability to understand the nature and extent of her property or her desire to allocate it to Brandie. In fact, Susan does not actually contest Margaret's competence. In Brandie's request for admission, he asked Susan:

> Please admit that your mother, Margaret Ware, was mentally competent and had testamentary capacity at the time that she deeded the homestead real property which is the subject of this action to Brandie Ware.

Susan answered, "Of course my mother was mentally competent, but she was unduly influenced by my brother." Susan also did not challenge the introduction of a note from Margaret's doctor declaring, "In terms of mental faculties/cognitive function, Ms. Margaret Ware ... is completely competent."

While Margaret is elderly, Susan has not provided any evidence that Margaret's age is linked to incapacity or special vulnerability. Accordingly, we hold that the superior court did not err in granting Brandie's motion for summary judgment without making a specific finding regarding Margaret's age and competence.

## B. The Superior Court Did Not Err in Granting Summary Judgment to Brandie on Susan's Other Claims.

### 1. There is no evidence that Margaret received legal advice from Brandie's lawyer, and in the absence of a confidential relationship Brandie is not required to provide his mother with independent counsel.

Susan next argues that Brandie failed to show that Margaret had independent legal representation. She implies that Brandie's lawyer counseled Margaret to give the property to Brandie, noting that the quit claim deed Margaret signed was authored by Brandie's attorney. However, she provides no proof that Brandie's attorney acted improperly. Counsel for Brandie vigorously denies that he gave legal advice to Margaret.

Susan also appears to argue that Margaret was required to have independent counsel prior to granting title to Brandie. Specifically, she states, "If Brandie's intentions were altruistic he would have provided his mother with independent counsel to advise her." Susan's contentions are unsupported by Alaska law.

Susan cites *Trujillo v. Padilla*,[30] a New Mexico case setting aside a fraudulent conveyance of community property from wife to husband. In that case the New Mexico Supreme Court considered the absence of independent counsel as one factor in determining whether a husband defrauded his non-English speaking wife when he convinced her to transfer title to him the day before he filed for divorce.[31] The court considered the wife's inability to read or write English, the husband's conscious effort to conceal the status and value of the property, and the husband's threat to kill the wife if she ever entered the premises.[32] In examining the transfer of property between a married couple under the circumstances described, the court asserted that "a presumption is raised against the validity of the transaction in which the wife did not have competent and independent legal advice...."[33] The New Mexico court justified this assertion by assuming a fiduciary relationship between married persons.[34] However, the court did not suggest that, absent a fiduciary relationship, independent counsel was required to transfer title.

The present case addresses the duties of parents and children rather than husbands and wives. Susan contends that Brandie has a confidential relationship with their mother,

---

**29.** *Id.* at 639.

**30.** 79 N.M. 245, 442 P.2d 203 (1968).

**31.** *Id.* at 206.

**32.** *Id.*

**33.** *Id.*

**34.** *Id.* at 207.

and that he consequently was required to provide Margaret with counsel. However, as shown above, the relationship between parent and child does not automatically result in fiduciary obligations. Because Brandie and Margaret did not have a confidential relationship, Brandie had no obligation to provide Margaret with independent legal counsel. Consequently, the superior court did not err in declining to require that Brandie provide representation to Margaret.

### 2. Susan's unjust enrichment claim lacks merit.

■ Susan argues that Brandie was unjustly enriched when he paid Margaret only ten dollars for property valued at $300,000. (Susan's argument ignores the life estate in the property that Margaret received.) "Unjust enrichment exists where the defendant received a benefit from the plaintiff and it would be inequitable for defendant to retain the benefit without compensating plaintiff for its value." [35] A party seeking to recover for unjust enrichment must show (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.[36]

■ Susan has not conferred a benefit upon Brandie. She was not involved in the transfer of property from Margaret to Brandie. Moreover, Susan's equitable claim is meritless because she presented no evidence of inequitable conduct (fraud or undue influence) to support it. In addition, a claim of unjust enrichment is not appropriate where a benefit is given gratuitously, without expectation of payment.[37] As discussed above, Margaret intended that the transfer of title be a gift to Brandie. Consequently, her claim of unjust enrichment lacks merit.

### 3. Because the prior trusts and will are amendable and revocable, the superior court did not err in disregarding them.

■ Provided Margaret acted of her own volition, as her deposition testimony reveals, there was no legal reason she could not revoke her living trust or amend her will. The trust in this case was revocable. Part IV, section A of the Margaret Ware Revocable Living Trust specifically states, "The grantor may amend or revoke this trust at any time, without notifying any beneficiary. An amendment must be made in writing and signed by the grantor. Revocation may be in writing or any manner allowed by law." Section B states, "The power to revoke or amend this trust is personal to the grantor. A conservator, guardian or other person shall not exercise it on behalf of the grantor, unless the grantor specifically grants a power to revoke or amend this trust in a Durable Power of Attorney." Under the language of the trust, then, Margaret had the right to amend or revoke the trust without notifying any of her children.

■ Margaret also had the legal right to amend her will. A prospective heir "generally has no recognized right to a living relative's property." [38] We have held that "a decedent's property interests devolve to heirs and devisees only upon death." [39] Until Margaret dies, she is free to amend her will.

The superior court did not err in finding an absence of genuine issues of material fact regarding Margaret's prior trusts and will.

### 4. Susan failed to raise below the validity of the statutory warranty deed.

■ On appeal, Susan seeks to challenge the validity of the deed, arguing that Brandie incorrectly used a statutory warranty deed to transfer property that was encumbered by the homes of his brothers. But she failed to raise this contention in the superior court.

---

**35.** *Sparks v. Gustafson,* 750 P.2d 338, 342 (Alaska 1988).

**36.** *Beluga Mining Co. v. State, Dep't of Natural Res.,* 973 P.2d 570, 579 (Alaska 1999).

**37.** *Sparks,* 750 P.2d at 342.

**38.** *Riddell v. Edwards,* 76 P.3d 847, 853 (Alaska 2003).

**39.** *Id.*

Accordingly, her challenge to the deed's validity is waived.[40]

## C. The Superior Court Did Not Abuse Its Discretion in Awarding Attorney's Fees Pursuant to Civil Rule 82(b)(3).

■ Civil Rule 82 provides for the award of attorney's fees to prevailing parties.[41] Subsection (b)(2) of that rule establishes a fee schedule for cases in which the prevailing party recovers no money judgment,[42] but in this case Brandie sought, and the court awarded him, an enhanced fee pursuant to Civil Rule 82(b)(3).[43]

On appeal, Susan argues that the superior court erred in awarding attorney's fees in excess of the standards provided in Civil Rule 82. However, the only substantive reason she advances on appeal is that the superior court failed in its obligation to satisfactorily explain why it deviated from the Rule 82 fee schedule. But in fact the superior court listed five reasons why it awarded fees in excess of the schedule set out in Rule 82(b)(2).[44] Susan's claim that the superior

court did not explain its decision is clearly wrong. Moreover, Susan has not argued on appeal that the reasons given by Judge Brown were erroneous. Indeed, she has not said one word about any of the reasons in the single paragraph in her brief devoted to this entire issue. On this basis alone, we could affirm the superior court.

Because Susan is *pro se*, we choose to review the reasons given by the superior court to determine if they show that the superior court abused its discretion. For the reasons that follow, we conclude that the court did not abuse its discretion in awarding enhanced fees.

In defending Susan's complaint, Brandie's counsel billed him $9,931.50.[45] Under the schedule of Rule 82(b)(2), which provides for a twenty percent award in contested cases that are resolved without trial, the fee award would have been $1,986.30. However, pursuant to subsections (A), (C), (E), (F), (G), (H), and (I) of Rule 82(b)(3), Judge Brown awarded $8,000, or eighty percent[46] of actual fees, to Brandie. Susan contends that the superi-

---

**40.** *Still v. Cunningham,* 94 P.3d 1104, 1111 (Alaska 2004).

**41.** Civil Rule 82(a) provides:

Allowance to Prevailing Party. Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

**42.** This subsection generally provides that the court shall award the prevailing party thirty percent of the prevailing party's reasonable actual attorney's fees in a case which goes to trial and twenty percent where the case is resolved without trial.

**43.** Civil Rule 82(b)(3) provides:

The court may vary an attorney's fees award calculated under subparagraph (b)(1) or (b)(2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
(A) the complexity of the litigation;
(B) the length of trial;
(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
(D) the reasonableness of the number of attorneys used;
(E) the attorneys' efforts to minimize fees;
(F) the reasonableness of the claims and defenses pursued by each side;

(G) vexatious or bad faith conduct;
(H) the relationship between the amount of work performed and the significance of the matters at stake;
(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
(K) other equitable factors deemed relevant.
If the court varies an award, the court shall explain the reasons for the variation.

**44.** The superior court's "Order for Attorney Fees" is set out below at page 1200.

**45.** In the same affidavit in which he indicated that he charged Brandie this amount, counsel also indicated that "it would be fair" to attribute a portion of other fees to this case, bringing the total to $10,452.25.

**46.** This percentage is calculated on the basis of a total billing of $9,931.50. *See supra* n. 45 and accompanying text. Were the total fees to be calculated at $10,452.25, the correct percentage would be seventy-seven percent.

or court abused its discretion in enhancing the fees awarded to Brandie.

The superior court has broad discretion to enhance attorney's fees above the amount prescribed by the Civil Rule 82(b)(2) schedule.[47] The superior court's award will not be reversed unless we find that there has been a clear abuse of discretion, and the court's determination is manifestly unreasonable.[48] We have frequently upheld awards well above the Rule 82(b)(2) schedule—including full (one hundred percent) fees—as not manifestly unreasonable.[49] Moreover, we have explicitly held that a finding of bad faith alone can justify increased attorney's fees.[50]

In the present case the superior court recited several reasons for awarding Brandie enhanced attorney's fees. Specifically, the court stated:

a) although the issues involved were not inherently complex, plaintiff's conduct of the litigation added additional and unnecessary levels of complexity to the action;

b) defendant's counsel's hourly rates and number of hours expended were reasonable and defendant's counsel made

substantive efforts to minimize fees actually charged to defendant;

c) the defenses of defendant were reasonable, and in fact, prevailed, while the claims of plaintiff were unreasonable and bordering on bad faith;

d) the issues at stake were significant compared to the amount of work done, both in economic and personal terms;

e) a substantial fee award will not be unduly onerous to plaintiff nor will it improperly discourage similar claims of good-faith litigants.

The first reason implicates factors (A) and (F) of Civil Rule 82(b)(3). While we have occasionally expressed concern about the use of factor (A)—complexity of the litigation—to enhance fees where the fees are calculated on an hourly basis,[51] we have repeatedly upheld its use.[52] Factor (F)—the (un)reasonableness of the plaintiff's claims—affected the complexity of the case, in Judge Brown's opinion. The court's finding that the plaintiff's conduct increased the difficulty of the litigation is supported by the record. For example, Susan failed to file witness lists, an exhibit list, or a trial brief, all of which

**47.** *Tenala, Ltd. v. Fowler*, 993 P.2d 447, 451 (Alaska 1999).

**48.** *Dahle v. Atl. Richfield Co.*, 725 P.2d 1069, 1075 (Alaska 1986).

**49.** *See, e.g., Crittell v. Bingo*, 83 P.3d 532, 536–38 (Alaska 2004) (upholding award of one hundred percent of actual attorney's fees, over $338,000, in case of bad-faith will claims); *Garrison v. Dixon*, 19 P.3d 1229, 1234–35 (Alaska 2001) (upholding award of one hundred percent of actual attorney's fees); *Cole v. Bartels*, 4 P.3d 956, 957 (Alaska 2000) (affirming award of seventy-five percent of actual attorney's fees); *LeDoux v. Kodiak Island Borough*, 827 P.2d 1121, 1125 (Alaska 1992) (holding that award of seventy-four percent was consistent with other cases and did not represent abuse of discretion); *Keen v. Ruddy*, 784 P.2d 653, 657 (Alaska 1989) (upholding award of one hundred percent of actual attorney's fees); *Steenmeyer Corp. v. Mortenson–Neal*, 731 P.2d 1221, 1227 (Alaska 1987) (holding that award of seventy-five percent was not manifestly unreasonable); *Hausam v. Wodrich*, 574 P.2d 805, 811 (Alaska 1978) (affirming award of eighty-six percent of actual attorney's fees).

**50.** *Garrison*, 19 P.3d at 1234 ("We will affirm an award of full, actual attorney's fees under Rule 82 where the superior court finds that the losing

party has engaged in vexatious or bad faith litigation."); *Keen*, 784 P.2d at 657 (holding that full attorney's fees were properly awarded when losing party acted in bad faith).

**51.** *See Cole*, 4 P.3d at 960 n. 20; *Tenala*, 993 P.2d at 451 n. 19 ("[C]omplexity works poorly as an independent enhancing factor ... where hourly fees, rather than the amount of a money judgment, serve as the measure of fees to be awarded. Hourly fees are usually already greater because of the complexity of a case. Thus using complexity as an enhancing factor overcounts the effect that complexity has on fees.") Nonetheless, in both *Cole* and *Tenala* we upheld the use of the complexity factor, noting that our analysis "points to a weakness in the rule, not trial court error." *Cole*, 4 P.3d at 960 n. 20.

**52.** *See, e.g., Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 851 (Alaska 2003) ("The Cizeks argue that the length and complexity of the case will be reflected in the fees themselves and therefore should not be used to increase the percentage of fees awarded. However, these factors are explicitly listed as permissible considerations under [the rule], and therefore are an appropriate basis for the trial court's decision."); *Cole*, 4 P.3d at 960; *Tenala, Ltd.*, 993 P.2d at 451.

"required additional time and complexity in the trial preparations due to the need to prepare for unknown contingencies." [53]

The second reason cited by Judge Brown implicates factors (C) and (E) of Civil Rule 82(b)(3). Judge Brown's citation of factor (C) (the reasonableness of the fees and hours expended) and factor (E) (the attorney's efforts to minimize fees) as supporting an enhanced award is not an abuse of discretion.[54]

The third reason cited by Judge Brown—that Brandie's defenses were reasonable while Susan's claims bordered on bad faith—implicate factors (F) and (G). This reason alone can justify an award of enhanced fees.[55] It was not an abuse of discretion to determine that Susan's claims were unreasonable and bordered on bad faith. As noted above, she provided absolutely no evidence to support any of her theories: undue influence,[56] fiduciary duty,[57] mental incompetence,[58] confidential relationship,[59] unjust enrichment,[60] or any other theory.[61] She persisted in her claims despite her mother's deposition testimony in which Margaret clearly refuted Susan's claims of mental incompetence and undue influence. Yet Brandie was required to defend each claim.

The fourth reason cited by Judge Brown—that the issues at stake were significant compared to the amount of work done—is amply supported by the record of this case. The property was valued at $426,200.[62] This amount is obviously significant compared to the $8,000 in fees awarded by the court.

In sum, the superior court's decision to enhance the attorney's fees awarded was not an abuse of discretion.

## V. CONCLUSION

Because Susan introduced no evidence of undue influence, we AFFIRM the superior court's grant of summary judgment on the undue influence claim. Because Susan failed to show error with regard to her other claims for summary judgment, we AFFIRM the superior court's rulings on those claims. Because the superior court did not abuse its discretion in the award of attorney's fees, we AFFIRM the superior court's award of attorney's fees.

FABE, Justice, with whom BRYNER, Chief Justice, joins, dissenting in part.

53. The dissent, citing Brandie's repeated reference to Susan's *pro se* status, concludes that Susan was, "at least in appearance," penalized for pursuing her case *pro se*. (Dissent ——) But, as the dissent states, "the superior court did not expressly adopt this argument," and we now explicitly reject it. Brandie was assessed enhanced fees because of her actions, not her status. Moreover, the superior court's finding that the award would not be "unduly onerous" to Susan and would not improperly discourage similar claims dispels the concern that the award may deny court access to future *pro se* litigants.

54. Counsel for Brandie charged less than his standard billing rate, wrote off substantial time devoted to meetings with Brandie and a trust attorney (who was consulted with regard to forming a trust) even though much of that time was expended in defending this case, and charged no time against this case in instances where there was any question as to whether the work was generated by this case or a closely related case involving Lance Ware. In addition, the trust attorney incurred fees that were related to the defense of the instant action but that were not charged to Brandie. Counsel clearly attempted to minimize fees.

We do note, however, that to the extent that Brandie relied on his filing of a summary judg-ment motion to meet Factor (E) (the attorney's efforts to minimize fees), we reject that argument. Cases resolved without trial are subject to a presumptive twenty percent fee award; cases resolved after trial to a thirty percent award. To allow the filing of a summary judgment motion to be considered an "effort to minimize fees" would run counter to the general framework of the rule.

55. *See supra* note 49 (citing cases holding that bad faith will justify a one hundred percent fee award).

56. *See supra* Part IV.A.2(a).

57. *See supra* Part IV.A.2(b).

58. *See supra* Part IV.A.2(c).

59. *See supra* Part IV.B.1.

60. *See supra* Part IV.B.2.

61. *See supra* Part IV.B.3–4.

62. The land was assessed at $177,800 and the improvements were assessed at $248,400.

FABE, Justice, with whom BRYNER, Chief Justice, joins, dissenting in part.

I write separately today because I disagree with the court's resolution of the attorney's fees issue presented by this appeal. In my view, the award of eighty percent of actual attorney's fees was unjustified and the matter should therefore be remanded to the superior court.

## A. Susan Has Sufficiently Raised the Claim that the Enhanced Award Was Erroneous.

The court adopts a decidedly narrow reading of Susan's briefing, asserting that she "has not argued on appeal that the reasons given by Judge Brown [for awarding enhanced attorney's fees] were erroneous."[1] However, under the "less demanding standard" by which we judge a pro se litigant's performance,[2] I believe that Susan has in fact raised this argument.

In her briefing before this court, Susan points out that "an award of attorney's fees after trial should be based upon the *appropriate* criteria set forth in Civil Rule 82."[3] She also insists that the enhanced award in this case was "excessive[,] ... punitive and retaliatory." Taken together, these two statements amount to a challenge to the appropriateness of the enhanced award and the criteria on which that award was based. In other words, Susan does argue that the reasons given by Judge Brown for awarding enhanced attorney's fees were erroneous. I therefore believe that the court is mistaken when it suggests that we could affirm the superior court without reviewing its reasons for awarding enhanced attorney's fees.[4]

1. Op. at 1198.

2. *Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (Alaska 2004).

3. *Farnsworth v. Steiner*, 601 P.2d 266, 272 (Alaska 1979) (emphasis added).

4. Op. at 1198 (asserting that Susan has not argued that the reasons given by the superior court were erroneous and concluding that, "[o]n this basis alone, we could affirm the superior court").

5. In his Memorandum in Support of Motion for Attorney Fees, Brandie further explained that,

## B. None of Brandie's Arguments Justified an Enhanced Award.

A review of Brandie's memorandum in support of his request for attorney's fees in superior court reveals that none of his arguments—arguments that the superior court apparently relied upon—justified an enhanced award of attorney's fees in this case.

### 1. Complexity

Brandie admitted in superior court that "[t]his action was not inherently complex," but argued that an enhanced award was nonetheless justified because Susan's "unfamiliarity with certain procedures caused additional complexity."[5] Although Rule 82(b)(3)(A) does in fact generally allow the superior court to vary an award of attorney's fees based upon "the complexity of the litigation," I believe that this complexity factor is a wholly inappropriate basis for an enhanced award in cases such as this—cases "where hourly fees, rather than the amount of a money judgment, serve as the measure of the fees to be awarded."[6]

The primary purpose of Rule 82's complexity factor is not to punish the losing party for litigating a complex case, but to ensure that the prevailing party is properly compensated.[7] In cases where an award of attorney's fees is based upon a percentage of the amount of a final money judgment, the prevailing party may be substantially under or overcompensated. This potential for disproportionate compensation stems from the fact that the amount of a final money judgment is not necessarily related to the amount of hours worked by the prevailing party's attorney or the amount of fees paid by the pre-

"as a *pro se* litigant, Susan often used procedures and raised arguments and issues which were inapposite or inappropriate and which required additional time by defendant to resolve."

6. *Tenala, Ltd. v. Fowler*, 993 P.2d 447, 451 n. 19 (Alaska 1999).

7. *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974) (explaining that "[i]t is not the purpose of Rule 82 to penalize a party for litigating a good faith claim but rather partially to compensate the prevailing party where such compensation is justified").

vailing party for that work. Simple cases requiring little work but involving large money judgments may generate rather modest attorney's fees,[8] while complex cases requiring a great deal of work but involving small money judgments may generate robust attorney's fees. As a result, an award of attorney's fees based upon a final money judgment will not always accurately reflect the actual cost of litigation to a prevailing party. Rule 82's complexity factor works to mitigate this problem. There is, however, no comparable risk of under or overcompensation when an award of attorney's fees is based upon a percentage of the total actual hourly fees paid by the prevailing party to his or her attorney. "In general, total fees calculated on an hourly basis will already reflect the complexity of a case."[9] Using complexity as an independent enhancing factor in these cases "double-counts the effect of complexity on fees" and ultimately overcompensates the prevailing party at the expense of the losing party.[10]

Although the court is correct that we have repeatedly upheld the use of the complexity factor in cases where actual total hourly fees form the basis of an award of attorney's fees,[11] we have just as often questioned its use. This case represents no less than the fourth time that we have confronted the rule's shortcomings and explained the double-counting problem.[12] On at least two occasions we have explicitly admitted that there is a "weakness in the rule."[13] When a

literal reading of one of our own rules has been shown time and again to lead to questionable results, it is our responsibility to depart from precedent and articulate a limiting construction of that rule.[14] In the context of Rule 82(b)(3)(A), I am convinced that this responsibility requires us to read the rule as inapplicable to cases in which awards of attorney's fees are based upon actual total hourly fees.

In the case at hand, Brandie's award of attorney's fees was based upon the total hourly fees he paid to his attorney. A standard, non-enhanced award would therefore have automatically taken into account any attorney's fees stemming from Susan's litigation methods. An enhanced award was unnecessary and, in my opinion, contrary to the proper construction of Rule 82(b)(3)(A).

### 2. Length of trial

Brandie also argued that an enhanced award was justified under Rule 82(b)(3)(B) because "extensive trial preparation had necessarily been nearly completed prior to the grant of summary judgment." But Rule 82(b)(3)(B) is exceedingly narrow in scope and only permits the court to vary an award based upon the actual "length of trial." The rule is simply inapplicable to cases that are resolved without trial and Brandie was therefore not entitled to an enhanced award on this basis. Moreover, it was Brandie's decision to wait to file his motion for summary

---

8. For example, when a case ends in a default judgment, the amount of the final money judgment won by the plaintiff is most often relatively large compared to the number of hours put into the case by the plaintiff's attorney. Consequently, an award of attorney's fees based upon a percentage of the final money judgment is likely to overcompensate a plaintiff who prevails by default. In order to combat this likelihood, Rule 82(b)(4) limits compensation to a percentage of the final money judgment or reasonable actual fees, "whichever is less."

9. *Cole v. Bartels,* 4 P.3d 956, 960 n. 20 (Alaska 2000).

10. *Id.*

11. Op. at 1199–1200.

12. *Cizek v. Concerned Citizens of Eagle River Valley, Inc.,* 71 P.3d 845, 851 (Alaska 2003) (ac-

knowledging that "the length and complexity of the case will be reflected in the fees themselves"); *Cole,* 4 P.3d at 960 n. 20 (noting that "complexity serves poorly as an independent enhancing factor where hourly fees ... serve as the subject of the award"); *Tenala,* 993 P.2d at 451 n. 19 (concluding that "using complexity as an enhancing factor [in cases such as this] overcounts the effect that complexity has on fees").

13. *Cole,* 4 P.3d at 960 n. 20; *Tenala,* 993 P.2d at 451 n. 19.

14. Under our case law, we will overrule precedent when we are "clearly convinced that the rule was originally erroneous ... and that more good than harm would result from a departure from precedent." *State v. Semancik,* 99 P.3d 538, 540 (Alaska 2004) (internal quotations omitted). These requirements are easily met here.

judgment until July 6, 2004—only one month before the scheduled trial was to take place. In other words, Brandie had the means to avoid "extensive trial preparation" and simply chose not to exercise it. Susan should not be penalized for Brandie's choice.

### 3. Reasonableness of rate, time, and number of attorneys

Brandie also argued that an enhanced award was justified because he employed a single attorney who worked a reasonable number of hours and charged a reasonable rate. Although Rules 82(b)(3)(C) and (D) do permit a superior court to vary an award of attorney's fees based upon the reasonableness of the prevailing party's litigation expenses,[15] these factors are best suited as a basis for *decreasing* an award where a prevailing party has expended an *unreasonable* amount of resources on his or her case. In general, parties are expected under Rule 82 to keep their litigation expenses reasonable: Rule 82(b)(2) explicitly limits compensation to a portion of "reasonable actual attorney's fees." It is unclear why Brandie's efforts to meet this expectation justified an enhanced award in this case.

### 4. Efforts to minimize fees

Brandie also argued that an enhanced award was justified under Rule 82(b)(3)(E) due to his and his attorney's efforts to minimize attorney's fees.[16] According to Brandie, "[t]he primary minimizer of fees in this action was in causing its resolution by motion work and thereby avoiding the expense of a trial." However, as noted above, Brandie filed his motion for summary judgment only one month prior to trial and therefore did not substantially reduce the amount of time his attorney had to invest in the case. Indeed,

Brandie admits that "extensive trial preparation had necessarily been nearly completed prior to the grant of summary judgment." Furthermore, as the court acknowledges, "[c]ases resolved without trial are subject [under Rule 82] to a presumptive twenty percent fee award; cases resolved after trial to a thirty percent award."[17] Allowing a successful summary judgment motion "to be considered an 'effort to minimize fees' would run counter to th[is] general framework of the rule."[18]

The court recognizes that we must reject Brandie's argument "to the extent that [it] relied on his filing of a summary judgment motion" as evidence of his and his attorney's efforts to minimize fees.[19] Given that Brandie cited his summary judgment motion as "[t]he primary minimizer of fees in this action," I believe we must reject the bulk of Brandie's argument that he is entitled to an enhanced award under Rule 82(b)(3)(E).

### 5. Reasonableness of claims and vexatious or bad faith conduct

Brandie also argued that an enhanced award was justified because Susan's claims were "inherently unreasonable and borderline bad faith."[20] Although the court is correct that a finding of bad faith under Rule 82(b)(3)(G) is sufficient to justify a substantially enhanced award,[21] I do not believe that the record supports such a finding in this case. Susan brought this suit after learning that her mother had transferred title to the family homestead to her brother for the sum of ten dollars. I agree that Susan was unable to offer sufficient evidence to support her claims that this transfer was somehow inappropriate, but I cannot agree that her claims were, given the circumstances, partic-

---

**15.** Under Rule 82(b)(3)(C), an award may be varied based upon "the reasonableness of the attorneys' hourly rates and the numbers of hours expended"; under Rule 82(b)(3)(D), an award may be varied based upon "the reasonableness of the number of attorneys used."

**16.** Rule 82(b)(3)(E) maintains that an award may be varied based upon "the attorney's efforts to minimize fees."

**17.** Op. at 1200 n. 54.

**18.** *Id.*

**19.** *Id.*

**20.** Rule 82(b)(3)(F) maintains that an award may be varied based upon "the reasonableness of the claims and defenses pursued by each side"; Rule 82(b)(3)(G) maintains that an award may be varied based upon "vexatious or bad faith conduct."

**21.** Op. at 1200.

ularly outrageous. Moreover, as the court notes, Susan's claims implicated an issue of first impression.[22] In my opinion, it is unjust to characterize claims as unreasonable when they were filed without the benefit of an authoritative body of law to guide and shape them. And although Brandie alleged that Susan's claims were part of some sort of bad faith effort to drain his resources, he admitted that "he has no way of demonstrating that this was an intentional strategy." In short then, while Susan's claims may have been weak, they were not unreasonable or "borderline bad faith."

### 6. Relationship between the amount of work performed and the significance of the matters at stake

Brandie also argued that "the relationship between the amount of work performed and the significance of the matters at stake justified an enhanced award."[23] In support of this argument, Brandie noted that if Susan had won by summary judgment, she would have been entitled to an award of $22,500 in attorney's fees. According to Brandie, this amount represented the "attorney fee value of this case." As a practical matter, however, Susan was not represented in this case and would not have been entitled to any attorney's fees had she prevailed. Even assuming that the matters in this case were significant in their own right, it is doubtful that this fact alone justified such a substantially enhanced award.

### 7. The enhanced award will deter pro se litigants from accessing the court.

In addition to the arguments detailed above, Brandie also consistently called attention to Susan's pro se status in his motion for enhanced attorney's fees. For example, Brandie stated that "although Susan was skilled, she is not an attorney and her unfamiliarity with certain procedures caused additional complexity"; that "as a *pro se* litigant, Susan often used procedures and raised

arguments and issues which were inapposite or inappropriate"; that "her *pro se* status added an entire level of complexity to this action"; and that "[i]f Susan had been represented by counsel, ... the situation would have been resolved more quickly." Taken together, these statements represented a not-so-subtle argument that Susan's pro se status, in and of itself, justified an enhanced award. While the superior court did not expressly adopt this argument, it based its decision to enhance the award, at least in part, upon Rule 82's complexity factor—a factor that Brandie repeatedly asserted was met by Susan's pro se status.

We are left, then, with a legal proceeding in which a litigant was, at least in appearance, penalized for pursuing her case pro se. Because pro se litigants are often economically distressed, this apparent threat of a pecuniary penalty for pursuing a case pro se is particularly onerous and likely to dissuade potential pro se litigants from exercising their constitutional right to access the courts. This is unacceptable. The right to access the courts is an "important right"[24] that should be enjoyed by all Alaskans equally, whether they be parolees or free,[25] children or adults,[26] pro se litigants or lawyers. If for no other reason, we should remand the issue of attorney's fees so as to reassure future pro se litigants that there is no penalty for passing through the courthouse doors without an attorney at their side.

### C. The Issue of Attorney's Fees Should Be Remanded.

For the reasons stated above, I believe that the issue of attorney's fees should be remanded to the superior court for recalculation using the appropriate factors under Rule 82(b)(3)(A)-(K). I therefore respectfully dissent.

---

22. Op. at 1192.

23. Rule 82(b)(3)(H).

24. *Patrick v. Lynden Transp.,* 765 P.2d 1375, 1379 (Alaska 1988).

25. *Bush v. Reid,* 516 P.2d 1215, 1221 (Alaska 1973).

26. *Sands v. Green,* 156 P.3d 1130 (Alaska 2007).