NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JIM CRAWFORD, | ) | |
| | ) | Supreme Court No. S-15192 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-05147 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| EMILIO AVILA, M.D., individually, | ) | AND JUDGMENT* |
| MACLOVIA AVILA, individually, | ) | |
| and XELA, LLC, | ) | No. 1542 – May 27, 2015 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Jim Crawford, pro se, Anchorage, Appellant. John W. Colver, Colver Law, LLC, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I. INTRODUCTION

A real estate developer and a property owner, through limited liability companies, entered into a contract to convert apartments into condominiums. The project failed and the real estate developer, personally, sued the property owner and his company. But the real estate developer's judgment creditor levied on that lawsuit, held

---

\*      Entered under Alaska Appellate Rule 214.

an execution sale, and then purchased and settled the developer's lawsuit against the property owner.

The developer again sued the property owner, alleging identical causes of action but in the formal name of the limited liability company that actually had signed the original contract. The developer also sought to vacate the earlier settlement agreement, arguing that it collusively undervalued his claim against the property owner. The superior court upheld the settlement agreement, dismissed the developer's second suit based on collateral estoppel, and assessed enhanced attorney's fees against the developer's company. The developer appeals in his own name. We affirm the superior court's decisions.

## II.     FACTS AND PROCEEDINGS

### A.     Hultquist Litigation

In late 2004 Jim Crawford confessed judgment in favor of Hultquist Homes, Inc. Hultquist later filed the confession of judgment with the superior court, securing a final judgment against Crawford for roughly $51,000 in April 2006.

### B.     Avila Litigation

Although the record does not reflect the entity through which he did so, Crawford, apparently in his capacity as a real estate professional, represented Emilio Avila in July 2004, helping him acquire an apartment complex. Avila later consulted Crawford on managing the apartment complex. When Avila grew dissatisfied with his investment, Crawford suggested converting the apartments into condominiums for sale and conducted feasibility studies.

In June 2006 Avila and Crawford entered into a contract for Crawford to provide his "personal services" as "real estate developer, listing and selling agent[,] and commercial mortgage banker," with the intent to convert the apartments into condominiums and then sell them. The contract identifies Avila and Xela, LLC as the

"client" and Alaska Real Estate, LLC as the "developer"; it also notes Century 21 Crawford Realty LLC as the brokerage operator, presumably for condominium unit sales. The contract was set for signature and signed only by Avila as the "Managing Member" of Xela and "Jim Crawford for the Managing Member" for Alaska Real Estate.

At that time Xela was a limited liability company owned equally by Avila and his wife, Maclovia Avila, and Alaska Real Estate was a limited liability company owned entirely by Crawford's wife, Teresa Crawford. Crawford was listed with the State of Alaska as Alaska Real Estate's "registered agent" and also as a "member" with a "0" percent interest. But during the litigation he contended he was the LLC's managing member when he signed the contract, stating that he and his wife would have "negotiated something, as to who got what" if the condo project became profitable.

Crawford secured a construction loan for the project, as well as take-out financing for prospective condominium purchasers. Project progress lagged; only two units had been sold by March 2007. Inspectors eventually shut down the project for municipal building code violations.

In February 2008 Crawford, acting pro se and in his own name, sued Avila, Maclovia Avila, and Xela (collectively Avila). Crawford alleged that: (1) Avila had hired substandard contractors whose work rendered the property unsalable; (2) Avila misrepresented his financial strength in connection with a mortgage Crawford applied for on Avila's behalf; (3) Avila's non-payment of marketing and advertising fees for the condominium project contributed to its failure; (4) Avila refused to comply with the project engineer's recommendations, further contributing to the project's failure; (5) Avila directly caused the project to fail, impairing the real estate listing contract with Teresa Crawford; (6) Avila did not deal fairly or in good faith under the contract; and (7) Avila defamed Crawford by blaming him for the project's failure. Crawford sought over $1.1 million in damages.

Avila counterclaimed against Crawford, adding Alaska Real Estate and Crawford Realty to the litigation and alleging that neither company had a "lawfully separate identit[y]" from Crawford. Avila's counterclaim alleged breach of contract and fiduciary duties and sought damages. Crawford responded that the two companies had "lawfully separate identities" from him, but then stated: "For purposes of trial in this case, Plaintiff will however represent those parties, with the permission of the Court, pro se in keeping with the Defendants['] statements in the Counterclaim."[1]

## C.    Hultquist And Avila Litigations Intertwined

Based on its 2006 judgment, Hultquist levied upon Crawford's lawsuit against Avila. Crawford sought to quash the execution sale in the Hultquist litigation, arguing that: (1) his lawsuit was exempt from sale; (2) the sale would deprive him of his right to try the case and would diminish the case's value; (3) the sale should be postponed until a "judgment or settlement is reached"; and (4) his confession of judgment was "obtained . . . under false promises." Hultquist responded that "no legal exemption under Alaska statute [exists] for a chose in action."[2] The superior court in the Hultquist litigation permitted the execution sale to proceed.

---

[1]    *But cf.* AS 22.20.040(a)(2) (requiring corporation to appear in a court proceeding through an attorney unless exception has been explicitly made by law). Whether an individual, non-attorney may represent a limited liability company in court proceedings is unclear, but the issue is not before us.

[2]    A chose in action is: "1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit. — Also termed *thing in action*." BLACK'S LAW DICTIONARY 275 (9th ed. 2009) (emphasis in original), *quoted with approval in McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 720 n.15 (Alaska 2013).

The sale was publicly advertised and held at a courthouse in October 2008. The advertisement listed the personal property for sale as: "[A]ll rights, claims[,] and chose in action arising from or which could have been asserted in the lawsuit of James Crawford v. Xela, Inc., et al., case number 3AN-08-5147 civil." Hultquist made an offset bid of $20,000 and was the highest bidder.

According to Hultquist it then attended a settlement conference with Avila and Crawford to settle Crawford's claim against Avila, but Crawford continued to assert an ownership interest, stymieing the negotiations. In May 2009 Hultquist sought a ruling in the Hultquist litigation on "whether Alaska law allows a judgment creditor . . . to levy, execute, and sell a cause of action claimed by the judgment debtor . . . as a method of satisfying an unpaid judgment."

The superior court recognized that case law supported Hultquist's position,[3] but expressed concern that Avila and Hultquist might collude to settle Crawford's case for less than its real value and that even without a deflated settlement, Crawford would be "deprived of his day in court against Avila." The superior court therefore crafted an equitable remedy allowing Crawford to redeem his claims against Avila by paying Hultquist $20,000 — the amount of Hultquist's offset bid — within 60 days of the superior court's order. The superior court later denied Crawford's motion for reconsideration, but ordered that the 60-day redemption period would "begin to run from the date of this order." Crawford did not redeem his claims or appeal from the superior court's rulings in the Hultquist litigation.

---

[3]    *See, e.g., Bergen v. F/V St. Patrick*, 686 F. Supp. 786, 787-88 (D. Alaska 1988) (interpreting Alaska law and finding, as the Hultquist superior court phrased it, "that a judgment-debtor's potential case against an insurer for alleged bad-faith failure to settle was subject to involuntary transfer by way of execution sale").

In March 2010 Hultquist agreed to settle Crawford's claim against Avila for $10,000 and the dismissal of Avila's counterclaim. Avila filed the settlement agreement later that month in the Avila litigation. Crawford then sought in that case to reject the settlement agreement, arguing that it grossly undervalued his claim and that Hultquist had no authority to enter into it.

In April 2010 Crawford also filed a new pro se complaint, this time with Alaska Real Estate as the named plaintiff, essentially re-alleging the facts and causes of action he had asserted in his earlier complaint.[4] The only substantive differences between the complaints were that in the 2010 complaint Crawford claimed more damages and did not name Maclovia Avila as a defendant.

In May 2010 Avila moved to consolidate the two actions, and the superior court in the Avila litigation granted the motion. In October the court ruled on Crawford's motion to reject the settlement agreement, treating it as a motion for summary judgment. Noting that Crawford's challenges to the execution sale had been ruled on over a year earlier in the Hultquist litigation, the court declined to readdress that issue, confining its inquiry to the propriety of the settlement agreement. Noting that the claim no longer was Crawford's, the court questioned whether there existed "any requirement that the settlement be for reasonable value" or whether "Hultquist [was] entirely free to dispose of the claim[] for any price, or even nothing at all . . . ." The superior court denied Crawford's motion to reject the settlement agreement.

D.    Continuing Litigation

In November 2011 Avila filed a motion for summary judgment, and in January 2012 the superior court entered summary judgment dismissing Alaska Real Estate's putative claim based on collateral estoppel because: (1) the claim was nearly

---

[4]        *See supra* note 1.

identical to Crawford's earlier claim; (2) Alaska Real Estate and Crawford were in privity; and (3) Crawford's earlier claim was "settled with finality and the case was closed."

Avila then filed a motion for costs and attorney's fees. Avila asserted that Crawford, through Alaska Real Estate, had acted in bad faith by attempting to relitigate the claim brought in the original Avila litigation. Crawford opposed the motion, contending that Avila was not the prevailing party because the claim had actually been settled in his favor. The court awarded Avila $15,000 in attorney's fees from Alaska Real Estate, justifying the award — roughly 75% of actual fees — on the ground that "the circumstances (a repeat, identical suit by one in privity with the [plaintiff] in the [first] suit) strongly suggests bad faith and/or sharp practice." The court also noted that it considered the award lenient, but limited the award "based on [plaintiff's] pro se status (despite, it should also be noted, the fact he has extensive experience in commercial, and some legal, affairs)." The court then issued a final judgment dismissing Alaska Real Estate's claim with prejudice and awarding Avila approximately $800 in costs and $15,000 in attorney's fees against Alaska Real Estate.

Crawford, pro se and in his own name only, appeals from the superior court's rulings against him and apparently the final judgment against Alaska Real Estate,[5] raising three issues in his brief: (1) he was denied due process and his right to a jury trial; (2) Avila did not raise prior release as an affirmative defense; and (3) he was the prevailing party for purposes of attorney's fees and should not have to pay the attorney's fees award assessed against Alaska Real Estate.

---

[5]     *See supra* note 1.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[6] We may affirm the grant of summary judgment on any grounds supported by the record.[7]

We review "[a]n award of attorney's fees, including a superior court's prevailing-party determination, . . . for abuse of discretion."[8] An attorney's fee award that is "arbitrary, capricious, manifestly unreasonable, or the result of an impermissible motive" is an abuse of discretion.[9] We independently review an award of attorney's fees that requires interpretation of Alaska Civil Rule 82.[10]

## IV. DISCUSSION

### A. Crawford Cannot Collaterally Attack Judgments From The Hultquist Litigation.

In May 2010 Crawford asked the superior court in the Avila litigation to reject Hultquist's settlement of his 2008 claim against Avila. The court denied his request. Crawford now argues that, as a party to the case that was settled, he had a right to be involved in the settlement between Hultquist and Avila — because he did not enter into that settlement "voluntarily and knowingly," he argues it should be set aside. But

---

**6**      *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

**7**      *See Wiersum v. Harder*, 316 P.3d 557, 563 (Alaska 2013); *accord Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961) ("[I]f there are any grounds for upholding the summary judgment . . . , regardless of whether they are the grounds set forth by the trial judge, the judgment should be affirmed.").

**8**      *Lee v. Konrad*, 337 P.3d 510, 518 (Alaska 2014).

**9**      *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Servs. Co.*, 45 P.3d 657, 672 (Alaska 2002).

**10**      *Nautilus Marine Enters. v. Exxon Mobile Corp.*, 332 P.3d 554, 557 (Alaska 2014).

Crawford's argument against the settlement agreement, and his request that we reinstate him "as acting Plaintiff of his own case" and bar Hultquist "from participating in any settlement negotiations" take issue with the judgments in the Hultquist litigation:

> [Avila] submitted what can only be described as a fraudulent Bill of Sale to the lower court to support their position that they should be allowed to substitute Hultquist Homes, Inc. as Plaintiff in Mr. Crawford's stead, and enter into settlement negotiations with counsel for Hultquist Homes, Inc., rather than the named Plaintiff, Mr. Crawford.

Crawford's argument is an attempt to collaterally attack the execution sale.[11] As explained below execution sales are not susceptible to collateral attack absent exceptional circumstances: Crawford must show either that the order confirming the sale was void or that there was fraud upon the court. Absent such a showing we will not set aside the Hultquist-Avila settlement agreement or review its merits.

Execution sales are governed by statute.[12] We recently noted that confirmation of an execution sale[13] cannot be collaterally attacked: " '[E]xcepting where some special facts are alleged which may create jurisdiction in a court of equity, the

---

[11] *See* RESTATEMENT (SECOND) OF JUDGMENTS ch. 5, intro. note (1982) ("Relief by way of a motion for new trial or an appeal was categorized as direct attack. Defensive relief, wherein a judgment was attacked in the course of another action in which the judgment was relied on by an opposing party, was usually categorized as collateral attack."); *see also* BLACK'S LAW DICTIONARY 318 (10th ed. 2014) (defining collateral attack as "[a]n attack on a judgment in a proceeding other than a direct appeal").

[12] *See* AS 09.35.010-.330.

[13] *Cf.* AS 09.35.180(d) (stating that when real property is sold at an execution sale "[a]n order confirming a sale is a conclusive determination of the regularity of the proceedings concerning the sale, as to all persons, in any other action or proceedings") Crawford's motion to quash the sale prompted the superior court's November 2009 order in the Hultquist case that effectively confirmed the execution sale. *Cf.* AS 09.35.180(a).

proper procedure [to set aside an execution sale] is by motion to vacate the sale in the action under which it is claimed any irregularities occurred.' "[14] There we concluded that a claim brought two years after an execution sale alleging that it "was wrongful due to inadequate notice . . . should have been brought in the case where the writ was issued, the levy made, and the execution sale held," not through a "separate lawsuit."[15]

In the context of a judgment for adoption, we explained when collateral attacks on prior judgments are proper:

> A collateral attack may be made only when the judgment is void. A judgment is void where the state in which the judgment was rendered had no jurisdiction to subject the parties or the subject matter to its control, or where the defendant was not given proper notice of the action and opportunity to be heard, or where the judgment was not rendered by a duly constituted court with competency to render it, or where there was a failure to comply with such requirements as are necessary for the valid exercise of power by the court.[16]

---

[14]     *Ackels v. Goldrich Mining Co.*, Mem. Op. & J. No. 1512, 2014 WL 3728232, at *2 n.7 (Alaska July 23, 2014) (quoting *Knapp v. Rose*, 197 P.2d 7, 9 (Cal. 1948)). *See also Ebner v. Heid*, 2 Alaska 600, 606 (D. Alaska 1905) (holding that a party contesting an execution sale as "fraudulently obtained" may either "file objections to the sale at the confirmation . . . [,] *appeal from the order of the confirmation*[, or] bring an action to set the [bill of sale] aside" (emphasis added)); *Lunsford v. Kaiser Gypsum Co.*, 516 P.2d 151, 152 n.2 (Alaska 1973) (" '[T]he confirmation of a judicial sale by a court of competent jurisdiction cures all irregularities in the proceedings leading up to or in the conduct of the sale, and . . . while such a sale will be set aside where fraud, mistake, or surprise is shown, mere irregularities in the preliminary proceedings do not render the sale invalid, and will not suffice to set it aside after confirmation . . . .' " (quoting *Heid v. Ebner*, 133 F. 156, 158 (9th Cir. 1904))).

[15]     *Ackels*, 2014 WL 3728232, at *2.

[16]     *Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966) (citations omitted).

Crawford argues that the bill of sale transferring his rights to his 2008 claim against Avila to Hultquist is "laughable," "fraudulent," and otherwise ineffective to empower Hultquist with the authority to settle Crawford's claim. Crawford also argues that because the bill of sale was not served upon nor signed by him, we should vacate the settlement agreement and, by implication, the superior court's order confirming the execution sale.

Crawford cites *Mallonee v. Grow*[17] to support his argument that the Hultquist-Avila settlement should be vacated. But in that case we found fraud upon the court sufficient to set aside an execution sale because the judgment creditor misrepresented the contingent nature of his judgment, "grossly" overstated the amount of the debt, levied upon property not owned by the judgment debtor, and failed to notify the judgment debtor when he filed a motion to confirm the sale.[18] Here, by contrast, Hultquist did not misstate the amount of its debt, it levied upon property Crawford asserted he held, and it notified him of its intent to do so. And, unlike Crawford, the aggrieved judgment debtor in *Mallonee* challenged the execution sale in the same proceeding under which it had been confirmed, not by bringing a separate suit.[19]

For two and a half months from early September 2009 — when Hultquist first levied on Crawford's 2008 claim against Avila — until late November 2009 — when the sale was confirmed — Crawford vigorously asserted his rights to his 2008 claim and was fully heard on those issues. Our review of the record confirms that the writ of execution was facially lawful, the sale of Crawford's claim was proper, and the litigation concerning the sale's confirmation adequately permitted Crawford to test the

---

[17]     502 P.2d 432 (Alaska 1972).

[18]     *Id.* at 439-40.

[19]     *See id.* at 436-37.

legality of both the writ and the sale. And, contrary to Crawford's final argument, there is no requirement that he sign the bill of sale or that it be served upon him.[20]

The relief Crawford sought in the Avila litigation, setting aside the settlement agreement, was a collateral attack on the execution sale and proceedings in the Hultquist litigation. Crawford could have appealed the confirmation of the execution sale in his case against Hultquist, but he did not. Nor did he seek post-judgment relief in the Hultquist litigation for alleged fraud on the court.[21] Accordingly, Crawford cannot now challenge how Hultquist obtained and settled Crawford's claim against Avila.[22]

---

[20]    *See* AS 09.35.170 ("In all other sales of personal property, the peace officer shall give the purchaser a bill of sale with [an acknowledgment of the payment]."). Hultquist's purchase of Crawford's 2008 claims was properly acknowledged. *See* BLACK'S LAW DICTIONARY 27 (10th ed. 2014) (defining "acknowledge" as "[t]o confirm as genuine before an authorized officer <acknowledged before a notary public>").

[21]    *See* Alaska R. Civ. P. 60(b)(6) (stating that a motion to set aside a final judgment for fraud must be brought within one year, but not limiting when "an independent action . . . to set aside a judgment for fraud upon the court" can be brought).

[22]    *See Wall v. Stinson*, 983 P.2d 736, 741 (Alaska 1999) ("The remedy for legal error is appeal, not collateral attack." (citing *Fauntleroy v. Lum*, 210 U.S. 230, 237 (1908))); *Burrell v. Burrell*, 696 P.2d 157, 163 (Alaska 1984) ("[Alaska] Civil Rule 60 is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment.").

Crawford also argues his right to a jury trial was denied by the Hultquist-Avila settlement agreement. To the extent Crawford invokes this right to attack the settlement agreement, he cannot do so for it is simply another way to collaterally attack the judgment in the Hultquist case that he could have appealed. Moreover, this issue is inadequately developed in Crawford's opening brief and dealt with almost exclusively in Crawford's reply brief. Under these circumstances Crawford has waived his argument that he was denied his right to a jury trial. *See A.H. v. W.P.*, 896 P.2d 240, 243-44 (Alaska 1995) (stating that undeveloped arguments devoid of legal authority are waived); *Danco Exploration, Inc. v. State, Dep't of Natural Res.*, 924 P.2d 432 ("[N]ew arguments

(continued...)

-12-                                                                          *1542*

**B.    Crawford's Alaska Real Estate Lawsuit Was Properly Dismissed.**

The superior court ruled that Crawford's Alaska Real Estate claim was barred by collateral estoppel because the claim was nearly identical to the one Crawford had brought earlier in his personal capacity, Crawford and Alaska Real Estate were in privity, and Crawford's earlier claim was "settled with finality and the case was closed."[23]   Crawford argues that the application of collateral estoppel was unsound because he and Alaska Real Estate were not in privity.  But both the superior court's ruling and Crawford's argument miss the real point — this is not a case where two different plaintiffs, perhaps in privity, brought separate claims with similar issues that might be subject to issue preclusion;[24] rather this is a case where there was one claim

---

[22]    (...continued)
presented for the first time in reply briefs are considered waived.").

[23]    "Collateral estoppel, or issue preclusion, 'bars the relitigation of issues actually determined in [earlier] proceedings.' " *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) (quoting *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 n.11 (Alaska 1979)).  For collateral estoppel to apply, four elements must be met:  "(1) *the party against whom the preclusion is employed was a party to or in privity with a party to the first action*; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment." *Id.* (emphasis added) (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1110 (Alaska 2002)).

[24]    Collateral estoppel probably cannot apply because Hultquist, the party that purchased and settled Crawford's first lawsuit, is not in privity with Crawford. *See Pennington v. Snow*, 471 P.2d 370, 375-76 (Alaska 1970) (stating that privity exists when the non-party has "notice and an opportunity to be heard," the procedure protected the non-party's "rights and interests," the non-party was adequately represented by a party to the first action, and the non-party's interests were aligned with those of a party to the first action).  But Hultquist's interests were not aligned with Crawford's, and Hultquist did not represent Crawford when it chose to settle Crawford's claim against
(continued...)

brought by Crawford in his own name for himself, for Alaska Real Estate, and, apparently, for Crawford Realty, and where that singular claim was purchased by Hultquist and settled. The legal mechanism preventing Crawford from bringing serial lawsuits on the same claim is that the claim was settled and extinguished.[25]

Crawford asserts on appeal that he was the contracting party with Avila, that the underlying litigation arose from "a breach of contract in a real estate transaction between . . . Crawford and [Avila]," and that "only one claim existed, the claim brought against . . . Avila . . . for monetary damages."[26] Indeed, although attorney's fees were awarded only against Alaska Real Estate, Crawford appeals the award's validity in his own name and complains that he should not have to pay it. But as the superior court noted, Crawford "lost control of the [claim] in this case when he failed to redeem [it]. . . . The claim[ is] no longer his; [it is] the property of Hultquist." The one claim that Crawford brought against Avila was lawfully sold and settled — realleging that same claim on behalf of Alaska Real Estate does not change this fact.[27] Because

---

[24]     (...continued)
Avila over Crawford's "vehement objections."

[25]     Crawford asserts that Avila failed to raise prior release and settlement as an affirmative defense and therefore waived it. But during Crawford's first lawsuit against Avila the parties fully litigated the validity and effect of the settlement between Hultquist and Avila, which came after the pleadings were filed, without any objection that some formality had not been followed, and when Crawford filed the Alaska Real Estate lawsuit Avila expressly raised settlement and release as an affirmative defense.

[26]     We note that Alaska Real Estate, owned by Teresa Crawford, knew that its contractual rights were being litigated in the Avila litigation because Teresa personally certified that she served Avila with pleadings and motions throughout the litigation.

[27]     *See RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1075-76 (10th Cir. 2009) (applying Utah law and holding that judgment creditor could execute
(continued...)

Crawford, bringing this appeal in his own name for himself and Alaska Real Estate, asserts that only one claim existed against Avila and that it was Crawford's claim to bring for himself and the limited liability companies, and because Hultquist lawfully purchased that claim and then settled it, it is evident that the superior court properly dismissed Alaska Real Estate's lawsuit.[28]

### C. It Was Not An Abuse Of Discretion To Award Enhanced Attorney's Fees.

The superior court awarded Avila $15,000, representing roughly 75% of its actual attorney's fees. The court reasoned that by bringing a claim that "had already been conclusively litigated," Crawford's actions "strongly suggest[ed] bad faith and/or sharp practice."

Crawford contests this award on appeal, arguing that he was the prevailing party because Avila "agreed to pay $10,000 in exchange for dismissal of the case." Crawford reasons: "[O]nly one claim existed, the claim brought against Defendants Avila, et al. for monetary damages, [and] that claim was validated when Defendants

---

[27]    (...continued)
upon and then move to dismiss judgment debtor's suit against it because "a public execution sale took place in which Defendants purchased Plaintiff's legal right to continue this appeal," the judgment debtor never appealed the court's refusal to quash the sale, and the judgment creditor became "the *true owner*[] of Plaintiff's lawsuit" (emphasis added)); *Citizens Nat'l Bank v. Dixieland Forest Prods., LLC*, 935 So. 2d 1004, 1013-14 (Miss. 2006) (holding that judgment creditor became "the *owner* of the plaintiffs' lawsuits" against it "when it purchased them at [an] execution sale" and could therefore substitute itself as the party plaintiff and dismiss the claims (emphasis added)).

[28]    Crawford has made no argument to us that it is factually or legally incorrect to treat Crawford and the two limited liability companies — and their claim(s) — as one. To the contrary, Crawford consistently has taken the position that he was entitled to bring the one claim in his name.

agreed to pay." Crawford argues that because Avila and Hultquist settled his claim, a finding of bad faith could not have been made as a matter of law.

We must note again that Crawford's argument itself concedes that the same claim was brought in each of the two suits against Avila. We next note that the attorney's fee award was not made with respect to the resolution of the first suit, which was settled, but rather was made with respect to the second suit, which was independently litigated and dismissed. Crawford and Alaska Real Estate took nothing by way of that suit. Accordingly, because Avila successfully defended against this claim, Avila was the prevailing party.[29]

"A trial court may award full attorney's fees if it finds that a party engages in vexatious and bad faith litigation, but an enhanced award of less than full fees does not require such conduct."[30] We will affirm an enhanced award of attorney's fees so long as the superior court "indicate[s] on the record [the] reasons for nonadherence to the fee schedule."[31] Crawford argues that, as a pro se litigant, he could not possibly have known that filing the second suit on behalf of Alaska Real Estate was frivolous or without merit. The gist of Crawford's argument is that he should be treated leniently as a pro se litigant, and that he did not act in bad faith as he defines that term.[32]

---

[29] *Lee v. Konrad*, 337 P.3d 510, 525 (Alaska 2014) ("The prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered.") (quoting *Taylor v. Moutrie-Pelham*, 246 P.3d 927, 929 (Alaska 2011) (internal quotation marks omitted)); *accord Buza v. Columbia Lumber Co.*, 395 P.2d 511, 514 (Alaska 1964).

[30] *Khalsa v. Chose*, 261 P.3d 367, 377 (Alaska 2011) (footnote omitted).

[31] *See Patrick v. Sedwick*, 413 P.2d 169, 179 (Alaska 1966).

[32] Crawford cites *United States v. Manchester Farming Partnership*, which
(continued...)

But even if Crawford's actions fell short of bad faith, an award of enhanced rather than full fees could still be proper.[33]  And Crawford's pro se status does not automatically insulate him from paying enhanced attorney's fees — superior courts often assesses attorney's fees against pro se litigants, and this court often affirms those awards.[34]

The superior court, in finding that Crawford's actions bordered on bad faith, conversed with both parties, "heard the inflection of their voices[,] and observed

---

[32]     (...continued)
states, "[B]ad faith is not simply bad judgment or negligence, but rather implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." 315 F.3d 1176, 1185 (9th Cir. 2003) (omission in original) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)) (internal quotation marks omitted).

[33]     *See Cole v. Bartels*, 4 P.3d 956, 960-61 (Alaska 2000) (holding that "a seventy-five percent fee award . . . does not require vexatious or bad faith conduct" and can stem instead from actions that increase the litigation's complexity coupled with unreasonable claims and defenses); *cf. Ware v. Ware*, 161 P.3d 1188, 1200 (Alaska 2007) (suggesting that a superior court's finding that a claim "bordered on bad faith" was equivalent to a finding of bad faith itself).

[34]     *See Khalsa*, 261 P.3d at 377 (affirming 50% award of actual attorney's fees because, even though pro se litigant had a "valid claim," she did not comply with court-ordered discovery, and that failure was "unreasonable, a conscious act[,] and in bad faith."); *Ware*, 161 P.3d at 1198-1200 (affirming 80% award of actual attorney's fees based in part on borderline bad faith because pro se litigant "provided absolutely no evidence to support any of her theories" and went ahead with the litigation after deposition testimony flatly contradicted her theory of the case); *Laab v. Cedarwood Condo. Owners' Ass'n*, Mem. Op. & J. No. 995, 2000 WL 34545826, at *2 (Alaska Sept. 27, 2000) (affirming award of full attorney's fees against pro se litigant because his claims were "frivolous" and involved "personal vendettas"); *Medlin v. City & Borough of Sitka*, Mem. Op. & J. No. 156, 1984 WL 908377, at *3 (Alaska Mar. 14, 1984) (affirming award of full attorney's fees against a pro se litigant because he filed motion after "unsupported and unsupportable" motion).

their relative candor in answering questions."[35] "Moreover, the trial court is 'in the best position to determine whether a party's behavior was excessively litigious or in bad faith.' "[36] The superior court determined that Crawford had enough professional and legal experience to understand that using Alaska Real Estate to re-allege the claim against Avila bordered on "bad faith and/or sharp practice." And, although Crawford argues that he did not act in bad faith in part because "[t]here was not . . . any evidence . . . that Mr. Crawford filed [the second] suit himself," he in fact clearly signed the second complaint. Accordingly, we cannot say that the finding of borderline bad faith was clearly erroneous, nor that it was an abuse of discretion to award some enhanced attorney's fees.[37]

## V. CONCLUSION

We AFFIRM the superior court's judgment.

---

[35] *Jackson v. White*, 556 P.2d 530, 532 n.4 (Alaska 1976) (citations omitted).

[36] *Weeks v. Houston*, Mem. Op. & J. No. 1449, 2013 WL 386518, at *6 (Alaska Jan. 30, 2013) (quoting *Reid v. Williams*, 964 P.2d 453, 461-62 (Alaska 1998)).

[37] *See State v. Johnson*, 958 P.2d 440, 445 n.10 (Alaska 1998) ("In general, a trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the schedule of the rule, so long as the court specifies in the record its reasons for departing from the schedule."); *Crook v. Mortenson-Neal*, 727 P.2d 297, 306 (Alaska 1986) (affirming 80% award of actual attorney's fees when superior court found that litigant's conduct "*border*[*ed*] *on bad faith*" because "the superior court was in the best position to evaluate the [litigant's] demeanor and credibility" (emphasis in original) (internal quotation marks omitted)).